IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-11081
_____


SAVE POWER LIMITED

          Plaintiff - Counter Defendant - Appellant

v.

SYNTEK FINANCE CORP

          Defendant - Counter Claimant - Appellee

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

August 26, 1997

Before POLITZ, Chief Judge, KING, Circuit Judge, and DUPLANTIER,[*]
District Judge.

KING, Circuit Judge:

     Plaintiff Save Power Limited appeals the district court's

grant of summary judgment declaring that defendant Syntek Finance

Corporation is a "Senior Lender" for purposes of the

subordination agreement at issue in this case.  Save Power also

_____

     [*] District Judge of the Eastern District of Louisiana,
sitting by designation.

appeals the district court's denial of its motion to transfer this case to Judge Means, a different judge in the same division before whom a previously filed, related action is pending. Finding substantial overlap between the present case and the original action, for reasons of comity and sound judicial administration we vacate the judgment of the district court and remand with instructions to transfer this case to Judge Means.

## I. BACKGROUND

This dispute concerns the respective rights of Save Power Limited ("Save Power") and Syntek Finance Corporation ("Syntek") to the assets of Pursuit Athletic Footwear, Inc. ("Pursuit"). Pursuit is a wholesale distributor of athletic shoes and is a wholly-owned subsidiary of Riddell Athletic Footwear, Inc. ("Riddell"). Prior to 1994, Save Power served for an extended period of time as the primary supplier of inventory to Pursuit. In settlement of litigation arising from obligations incurred during that time, Save Power, Pursuit, and a number of other parties executed a series of agreements on February 15, 1994. The agreements relevant to this litigation are the License Agreement, Finance and Security Agreement ("Finance Agreement"), Loan and Security Agreement ("Loan Agreement"), and Subordination Agreement.

The License Agreement bears on this case to the extent that it constitutes Pursuit's most valuable asset. Under the License Agreement, Pursuit acquired the exclusive right to manufacture

and sell worldwide athletic footwear bearing the "Riddell" trademark and name. The Finance Agreement, executed by Save Power and Pursuit, provides for Save Power to advance working capital and athletic shoe inventory to Pursuit in excess of the $23 million in capital and inventory previously advanced. Pursuit was to repay its obligations to Save Power through the sale of shoes to third-party retailers. All account payments for such sales were to be directed to Heller Financial, Inc. ("Heller"), which, after deducting amounts owed to it periodically under the Loan Agreement, would forward the balance to Save Power. The Finance Agreement further provides that Save Power acquired a security interest in the assets of Pursuit, including the License Agreement, inventory, and accounts receivable. To obtain additional financing, Pursuit entered into the Loan Agreement with Heller. Pursuant to the Loan Agreement, Heller made a term loan to Pursuit and received a security interest in the assets of Pursuit. This security interest excludes Pursuit's rights under the License Agreement. Pursuit, Save Power, and Heller contemporaneously executed the Subordination Agreement, which references both the Finance Agreement and the Loan Agreement. Under the Subordination Agreement, Save Power agreed to subordinate to Heller, as "Senior Lender," the debt owed to Save Power by Pursuit.[1] The

---

[1] The parties disagree as to the amount of subordinated debt. Save Power contends that only $20 million of the outstanding debt was subordinated to Heller's security interest, while Syntek contends that $20 million represents the minimum, not the maximum, subordinated debt.

Subordination Agreement defines "Senior Lender" as "Heller, its successors and assigns and any person who refinances or refunds all or any portion of the Senior Debt." "Senior Debt" is defined in the Subordination Agreement as all indebtedness of Pursuit owed to "Senior Lender" under the Loan Agreement.

Shortly after these agreements were executed, Pursuit halted its payments to Save Power. Save Power contends that Pursuit's outstanding debt had grown to $31 million, but Save Power was unable to foreclose on its security interest due to the terms of the Subordination Agreement and Pursuit's outstanding debt to Heller. The debt owed to Heller was due to be fully paid by the end of May 1995 (which would relieve Save Power of the restrictions of the Subordination Agreement), and Heller had informed Pursuit that it did not intend to renew its loan.

Syntek became involved at this juncture as a provider of new financing to Pursuit. Syntek is a shell corporation affiliated with one of the owners of Pursuit. On May 19, 1995, Syntek and Pursuit entered into an agreement whereby Syntek agreed to make a term loan to Pursuit in an amount sufficient to satisfy Pursuit's obligations to Heller. Funds of just over $200,000 were wired to Heller on that day pursuant to this agreement.[2] Syntek thus claims to have refinanced Pursuit's debt to Heller and become a "Senior Lender" under the terms of the Subordination Agreement.

Later that year Riddell and Pursuit filed suit against Save

---

[2] We are unable to determine from the record the specifics of this transaction, e.g., what entity actually supplied the wired funds.

4

Power and several affiliated corporations (the "Original Action") in state court in Tarrant County, Texas. Save Power removed this action to the United States District Court for the Northern District of Texas, Fort Worth Division, on August 11, 1995, where it was assigned to Judge Means. Save Power filed a counterclaim on August 15, 1995. On August 25, 1995, Save Power filed an application for temporary restraining order and preliminary injunction seeking to enjoin Pursuit from dissipating the assets in which Save Power claimed a security interest. During this time period Save Power filed a related action in the Dallas Division of the Northern District (the "Related Action"). The Related Action was transferred to Judge Means on August 28, 1995, and consolidated with the Original Action on August 31, 1995. On September 11, 1995, Pursuit filed in the Original Action its own application for temporary restraining order and preliminary injunction seeking to enjoin Save Power from foreclosing on its security interest on the ground that Syntek was a holder of outstanding senior debt under the Subordination Agreement. The court held a joint hearing on both applications in late September and issued an order denying both applications on October 6.

Save Power filed the present action on September 11, 1995, in the Fort Worth division of the Northern District. Save Power sought a declaratory judgment that Save Power has a perfected security interest in the assets of Pursuit that is superior to that of any third party, that Save Power is entitled to foreclose on this security interest, and that Syntek does not possess any

5

rights or standing under the Subordination Agreement. This case was assigned by random draw to Judge McBryde.

On September 28, 1995, Syntek filed a counterclaim against Save Power and moved for partial summary judgment. On October 16, 1995, in addition to its response in opposition to Syntek's motion, Save Power filed a motion to transfer the case to Judge Means. Judge McBryde denied Syntek's motion for partial summary judgment on October 18, 1995. Subsequently, on November 7, 1995, Judge McBryde denied Save Power's motion to transfer, citing his familiarity with the case as a result of studying the record in connection with Syntek's motion for partial summary judgment.

On June 6, 1996, Save Power filed a motion for summary judgment, which was followed shortly thereafter by Syntek's second motion for partial summary judgment. On July 26, 1996, Judge McBryde issued a memorandum opinion and order granting Syntek's motion for partial summary judgment and denying Save Power's motion for summary judgment. The court entered final judgment on August 2, 1996, declaring Syntek to be a "Senior Lender" under the terms of the Subordination Agreement and assessing all costs against Save Power. Save Power filed a timely notice of appeal.

## II. DISCUSSION

Save Power challenges the declaratory judgment entered by Judge McBryde as well as his denial of its motion to transfer. Because we conclude that Judge McBryde abused his discretion in

6

denying the motion to transfer,[3] we do not reach the merits of the declaratory judgment.

The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.  See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985); Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971).  Syntek, in fact, states that it "does not disagree with the legal proposition advanced by Save Power that where duplicative issues and parties exist in two cases the court with the first case should resolve the issues between the parties and the second court should defer."

The "first to file" rule is grounded in principles of comity and sound judicial administration.  "The federal courts long have recognized that the principle of comity requires federal district courts -- courts of coordinate jurisdiction and equal rank -- to exercise care to avoid interference with each other's affairs." West Gulf, 751 F.2d at 728.  "The concern manifestly is to avoid

_____

[3]  While a district court's decision whether to transfer a case pursuant to 28 U.S.C. § 1404(a) is reviewed for abuse of discretion, Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir.), cert. denied, 493 U.S. 935 (1989), "[t]he standard of appellate review of district court decisions to accept or decline jurisdiction over declaratory and injunctive actions when comity issues are at stake is not entirely clear."  West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 729 n.2 (5th Cir. 1985).  As in West Gulf, however, we need not settle the standard of review question because we conclude that, even if the district court had broad discretion to decide whether to transfer this case to Judge Means, it abused its discretion in retaining jurisdiction under the particular circumstances here.  See id.

the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  Id. at 729; see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-20 (1976).  This concern applies where related cases are pending before two judges in the same district, as is the case here, as well as where related cases have been filed in different districts.  Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1161 n.28 (5th Cir. 1992) ("The same concern with avoiding duplicative litigation is present where similar suits have been filed in two courts within the same district."), cert. denied, 506 U.S. 1079 (1993).[4]

Syntek argues that the "first to file" rule does not apply in this case because neither the issues nor the parties are identical to those in the Original Action.  The rule does not, however, require that cases be identical.  The crucial inquiry is one of "substantial overlap":

> Once the likelihood of substantial overlap between
> the two suits had been demonstrated, it was no longer
> up to the court in Texas to resolve the question of

---

[4]  Syntek suggests in its brief on appeal that Save Power waived its right to appeal the transfer issue because Save Power relied on 28 U.S.C. § 1404 before the district court as authority for a transfer between judges in the same division, but now "raises a new justification for its argument."  Syntek cites In re Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993), in which this court affirmed the district court's conclusion that appellant had waived his appeal of an issue that he raised only by implication in case cites before the bankruptcy court.  We stated that for an argument to be preserved for appeal, "the argument must be raised to such a degree that the trial court may rule on it."  Id.  As indicated in our discussion infra, Save Power met this standard in the motion to transfer it filed below.

> whether both should be allowed to proceed. By virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving that subject matter in Texas, the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York.

Mann Mfg., 439 F.2d at 408. "[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues." Id. at 408 n.6; see also TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996) ("Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." (citation omitted)).

Both the Original Action and the present case center on the question whether Save Power can proceed with foreclosure on any or all of its security interest in the assets of Pursuit under the terms of the Subordination Agreement. This question involves several component issues, most notably: (1) whether Syntek is a "Senior Lender" under the Subordination Agreement, (2) whether there is unsubordinated debt on which Save Power may foreclose even if Syntek qualifies as a "Senior Lender," and (3) whether Save Power may proceed as the secured party with superior rights. In ruling on Pursuit's application for preliminary injunction, Judge Means did not decide the first issue because he determined that Pursuit lacked standing to assert the rights of a "Senior

9

Lender" under the Subordination Agreement.  The overarching question being whether Save Power should be enjoined from foreclosing on Pursuit's assets, however, Judge Means did decide the second and third issues.  Assuming for purposes of these issues that Syntek is a "Senior Lender" under the Subordination Agreement, Judge Means concluded that the amount of Pursuit's debt to Save Power that is in excess of $20 million is not subordinate to the Syntek debt and that Syntek does not have a security interest in the License Agreement.  Based in large part on these findings, Judge Means declined to enjoin Save Power from foreclosing on Pursuit's assets.  The same issues were before Judge McBryde, who reached a contrary result.  After determining that Syntek is a "Senior Lender" under the Subordination Agreement, Judge McBryde ruled that Save Power was not entitled to foreclose on any of Pursuit's assets under the lien subordination provision of the Subordination Agreement because Save Power had not shown that "any liens it seeks to foreclose do not also serve as security for the subordinated debt."  Not only do the issues "substantially overlap," but inconsistent rulings have already resulted.[5]

---

[5]  At oral argument before this court, counsel for Save Power stated that Save Power initiated foreclosure proceedings in reliance on Judge Means's order, but Pursuit filed bankruptcy before the foreclosure sale took place.  Then, following Judge McBryde's judgment, Save Power was sued for allegedly wrongfully proceeding with foreclosure.  This suit was filed originally in the Delaware bankruptcy court where Pursuit's bankruptcy was pending.  The Delaware district court withdrew the reference on the wrongful foreclosure suit and then transferred it to Judge Means, where it was consolidated with the Original Action.

10

The fact that Syntek is not a party to the Original Action does not undermine the appropriateness of transfer in view of all the facts of this case.  Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.  See West Gulf, 751 F.2d at 731 n.5 (noting that incomplete identity of parties does not mandate that two "essentially identical" actions remain pending simultaneously where complete relief was nevertheless available in one forum and the missing parties probably could be made parties to the action in that forum); see also National Health Fed'n v. Weinberger, 518 F.2d 711 (7th Cir. 1975) (dismissing second-filed action without prejudice even though it involved different plaintiffs than the first-filed action).  In this case, Syntek filed a motion for leave to intervene in the Original Action on September 11, 1995, but withdrew the motion before Save Power had filed a response and before Judge Means had ruled on it.  Although Syntek claims that it was unable to intervene in the Original Action as a result of Save Power's opposition to its motion, the procedural history of the Original Action does not bear this out.  Syntek's interest in the Original Action, moreover, was represented to the court via Pursuit, which faced the likelihood of being put out of business if Save Power were not enjoined from foreclosure.  The fact that Syntek was not an active participant in the preliminary injunction hearing does not alter our analysis of the relevant factors.

The record indicates that the facts militating in favor of

11

transfer were before Judge McBryde prior to his rulings on any substantive matters in this case. Save Power disclosed on its civil cover sheet when it filed this action that two related cases were pending before Judge Means. The motion to transfer itself contained Judge Means's order on the applications for preliminary injunction, which reveals the substantial overlap of issues, and indicated that Syntek had moved to intervene in the Original Action. Save Power filed its motion to transfer on the same day it filed a response to Syntek's motion for partial summary judgment. Although briefing with respect to the summary judgment motion was completed before that concerning the transfer motion, the court need not have expended resources on the summary judgment motion given notice of the motion to transfer. Under these circumstances, Judge McBryde's denial of the motion to transfer was an abuse of discretion.

We express no opinion on the merits.


III. <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court is VACATED and this case is REMANDED with instructions that it be transferred immediately to Judge Means. Each party shall bear its own costs.

12