Revised June 3, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50368
_____


THE CADLE COMPANY,

              Plaintiff-Appellant,

-vs-

WHATABURGER OF ALICE, INC.;
M. LOUISE ANDREWS; KATHY A. REESE;
HERBERT E. POUNDS, JR.; GEORGE P.
BRAUN; AND JOE ALVIN ANDREWS, JR.,

              Defendants-Appellees.

_____


Appeal from the United States District Court
for the Western District of Texas

_____
May 7, 1999

Before KING, Chief Judge, STEWART, Circuit Judge, and LITTLE,
District Judge.[*]


LITTLE, District Judge:

     The Cadle Company ("Cadle") appeals the district court's

decision to dismiss its RICO and state law claims under the

"first-to-file" rule.  Cadle argues that the district court

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

should have applied the rule only if it first determined that the first-filed court's jurisdiction was proper, and erred by failing to do so in this case. Cadle argues in the alternative that even if the lower court did not err in applying the rule, it should have transferred the case rather than dismissed it. We find that the district court properly applied the first-to-file rule, but should have transferred the suit rather than dismissed it. The judgment of the district court is therefore vacated and the case is remanded to the district court with instructions to transfer the case.

## I. Background

The following events are gleaned from Cadle's complaint in the district court. Appellee Whataburger of Alice ("Whataburger") is a family-owned corporation founded by Joe Alvin Andrews ("Andrews") in 1968. Whataburger grew into a successful business and supplied Andrews with funds to invest in other business ventures. One of these ventures, Anshad, Inc. ("Anshad"), owned apartment buildings in the San Antonio area. As part of his dealings with Anshad, Andrews in 1987 guaranteed a loan to Anshad from the Windsor Savings Association ("Windsor") in the amount of $2,495,000. In 1988 Anshad defaulted on its obligation to repay Windsor and Andrews defaulted on his guarantee. Windsor filed suit

2

against Andrews to recover the debt in 1989. Windsor obtained a judgment against Andrews on 13 June 1991 in the amount of $1,075,167.47, plus post judgment interest ("the Windsor judgment"). That judgment forms the basis for the instant dispute.

Windsor went bankrupt and into receivership in or about 1992. Cadle claims to have acquired the right to collect on the Windsor judgment from Windsor's receiver on 23 June 1992. As we shall see *infra*, Cadle's claim of ownership is the subject of a vigorous debate in the bankruptcy proceedings, and the parties have attempted to carry on that debate in this court as well. The defendants have even based a motion to dismiss pursuant to Fed. R. App. Proc. 38 on their argument that Cadle does not own the claims and therefore lacks standing to argue about its dismissal in this court. That motion is denied. Cadle has suffered an adverse ruling in the district court, and has standing to appeal. See Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 333 (1980) ("[A] party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom."). Moreover, we need not (and as we shall see should not) decide who owns these claims in order to answer the question presented by this appeal. We assume without deciding that

3

Cadle does own the right to collect on the Windsor judgment for purposes of this appeal only.

Cadle claims that the defendants (Andrews' wife, daughter, lawyer, accountant, and son, respectively) conspired with Andrews in the execution of two fraudulent transfers intended to insulate Andrews from collection of the Windsor judgment. First, Cadle claims that Andrews and Whataburger, co-plaintiffs in a suit against Whataburger's franchisor, structured the settlement agreement that resulted from the litigation to shield the proceeds from ownership by Andrews:[1] Whataburger received the entire amount of the $16,450,000 settlement, while Andrews received nothing. Whataburger, flush with cash from the settlement, distributed sizeable bonus payments to all of its shareholders but Andrews, even though he owned 23.7% of Whataburger's stock. Cadle claims that the settlement should have filtered to the shareholders on a pro rata basis. Andrews should have received his share of the stockholder bonus. If so, Andrews would have had assets that Cadle could have seized to satisfy the Windsor judgment.

Second, Cadle alleges that the defendants helped Andrews release 15,000 shares of Whataburger stock that Andrews had

---

[1] Andrews and Whataburger had agreed to sell their restaurants in Bexar County, Texas and the exclusive right to operate the chain in the area for 10.5 million dollars. The franchisor challenged the sale, which caused the deal to fall through.

pledged to secure a debt he was repaying to Laredo National Bank. Had the debt been paid in full, the 15,000 pledged shares would have been returned to Andrews. Cadle then could have seized those shares in partial satisfaction of the Windsor debt. Whataburger, however, bought the debt from the bank, which included the pledge of the stock. Andrews defaulted, and Whataburger foreclosed on the pledged stock on 4 February 1994. Andrews, therefore, remained without any assets that Cadle could seize to satisfy the Windsor judgment.

## II. Procedural History

On 14 June 1994, Andrews filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division. Cadle filed several claims in those proceedings seeking to recover on the Windsor judgment.[2] On 10 April 1996, bankruptcy Judge Richard Schmidt dismissed Cadle's second amended complaint for lack of standing because he found that the bankruptcy trustee, rather than Cadle, actually owned the claims that Cadle was attempting to assert. See In re Joe Alvin Andrews, No. 94-21308, slip op. (Apr. 10, 1996). Undaunted by this

---

[2] The record in this case does not include that complaint, so we cannot set forth allegations with any more specificity.

setback, Cadle filed a third amended complaint in the bankruptcy court on 24 November 1997.

Apparently unwilling to leave matters in the hands of the bankruptcy court, Cadle filed the instant complaint in the United States District Court for the Western District of Texas, San Antonio Division, on 23 December 1997. Cadle claims that the defendants violated RICO §§ 1962(b), (c), and (d) by engaging in a pattern of wrongful conduct involving bankruptcy fraud, mail fraud, wire fraud, and securities fraud (1) to acquire an interest in and to maintain control over the affairs of Whataburger and Andrews' financial empire and (2) fraudulently to transfer and otherwise maintain custodianship over Andrews' assets. Cadle also alleges that the defendants' conduct constitutes tortious interference with Cadle's right to enforce its judgment against Andrews in violation of Texas state law. Finally, Cadle alleges that Whataburger's corporate form should be pierced and set aside because Andrews and the individual defendants operate the company as an extension of themselves in furtherance of their fraudulent scheme.

The defendants moved to dismiss, arguing again that Cadle does not own the claims and that the pending bankruptcy matter required the court to dismiss the case under the first-to-file rule. Both parties devote their attention to the ownership of

6

the claims.  As to the pending bankruptcy proceedings, Cadle stated simply that the first-to-file rule should not apply because "[t]he bankruptcy court . . . does not have jurisdiction to entertain the RICO claims[.]"

The district court, in its ruling of 16 March 1998, relied upon the first-to-file rule.  See Cadle v. Whataburger of Alice, Inc., No. 97-1502, slip op. (W.D. Tex. Mar. 16, 1998).  In doing so, the court decided that the issues pending before the bankruptcy court substantially overlapped those raised by the suit before it.  See id. at 3.  The fact that the attorney and accountant are named as defendants in the district court suit but not in the bankruptcy complaint does not, in the district court's opinion, render the cases so dissimilar as to warrant action at the district court level. See id.  The court did not specifically address Cadle's objection that the bankruptcy court lacked subject matter jurisdiction over its claims, but closed with a comment on the propriety of addressing any substantive issues in the case:

> There are proper appellate procedures a dissatisfied litigant can employ.  This Court does not sit as a super appellate court to review orders of bankruptcy courts in other districts, and will not be employed in a collateral attack on a decision of a sister court.  This is one of the very abuses the first-to-file rule is designed to prevent, and is an illustration of why the principle of comity is so vital to our judicial system.

7

Id. at 3-4.  The district court decided to dismiss the case rather than transfer it to the Laredo proceedings because the "plaintiff waited too long there to add Pounds and Braun as defendants."  Id. at 3 n.2.  Cadle filed this appeal challenging the district court's order of dismissal.

Meanwhile, back in the bankruptcy court, proceedings continued apace.  The bankruptcy court, on 9 June 1998, again decided that Cadle did not own the claims and therefore lacked standing to bring the motion.  On 12 November 1998, the bankruptcy court entered a take nothing judgment against Cadle on all of its claims.  Cadle appealed that judgment, as well as Judge Schmidt's earlier ruling, to the Laredo district court.

## II.  Analysis

Cadle argues here that the district court should not have applied the first-to-file rule because the bankruptcy court in the first-filed suit never had jurisdiction over the claims. The first-to-file rule is a discretionary doctrine, see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952) ("Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."), the application of which we normally review for abuse of that discretion.  See Sutter

<u>Corp. v. P&P Indus., Inc.</u>, 125 F.3d 914, 917 (5th Cir.1997). Cadle, however, does not raise issues of application, such as the district court's findings that the issues raised by the cases substantially overlap and that such a finding is not precluded by the lack of complete identity of parties between the cases. Cadle instead questions the contours of the rule itself. This is a purely legal matter that we review de novo. <u>See</u> <u>id</u>.

**A.   Contours of the First-To-File Rule**

Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. <u>See</u> <u>Save Power Ltd. v. Syntek Fin. Corp.</u>, 121 F.3d 947, 950 (5th Cir. 1997); <u>West Gulf Maritime Ass'n v. ILA Deep Sea Local 24</u>, 751 F.2d 721, 728 (5th Cir. 1985). The rule rests on principles of comity and sound judicial administration. <u>See</u> <u>Save Power</u>, 121 F.3d at 950; <u>West Gulf</u>, 751 F.2d at 728. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." <u>West Gulf</u>, 751 F.2d at 729. The defendants, rather than undertake a comprehensive response to Cadle's argument, have gone to tremendous length arguing yet again that Cadle

does not even own the claims it is attempting to assert, and therefore that Cadle lacks standing. The only proper subject for our attention at this point, however, is the district court's decision to dismiss Cadle's claims under the first-to-file rule and to leave Cadle's jurisdiction and the defendants' standing arguments for the bankruptcy court.

Cadle essentially argues that the first-to-file rule should include a precondition that requires the district court to find proper jurisdiction in the first-filed court before applying the rule at all. Although Cadle does not say so, it has imported this notion from the doctrine of collateral estoppel, which "applies to bar litigation of an issue previously decided in another proceeding by a court of competent jurisdiction . . . ." Copeland v. Merrill Lynch & Co., Inc., 47 F.3d 1415, 1421 (5th Cir. 1995). Cadle's argument misses the mark for at least two reasons.

### 1. The Relationship Between the First-To-File Rule and Collateral Estoppel

First, Cadle's implicit comparison to the doctrine of collateral estoppel is inapposite. The comparison does have some surface appeal in light of our statement in another case that the first-filed court takes priority "[b]y virtue of its prior jurisdiction over the common subject matter . . . ." Mann Mfg. Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir.

10

1971).  But it makes no sense to read this statement to establish a jurisdictional precondition for the first-to-file rule similar to that required for the doctrine of collateral estoppel.  Although both doctrines rest on notions of judicial economy and consistency in judgments, they address these issues at different times.  Collateral estoppel is a backward-looking doctrine.  Courts apply it to avoid relitigation of, and inconsistency with, issues already decided by other courts.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  We examine the prior court's jurisdiction before applying the doctrine of collateral estoppel because we should only bind the present litigants with a past ruling if that ruling was rendered by a court of competent jurisdiction.  See 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4428 (1981) ("[A] judgment entered by a court lacking subject matter jurisdiction is 'void' and is not entitled to res judicata effect.").[3]

The first-to-file rule, by contrast, is essentially a forward-looking doctrine.  Courts use this rule to maximize

---

[3] The quoted passage discusses the subject matter jurisdiction of the decision-rendering court in the context of closely related doctrine of res judicata.  The importance of the decision-rendering court's jurisdiction is now apparently very rarely brought into issue.  "Today, it is safe to conclude that most federal court judgments are res judicata notwithstanding a lack of subject matter jurisdiction."  18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4428 (1981).  No such clear statement as to the importance of the decision-rendering court's subject matter jurisdiction seems to exist in the context of collateral estoppel.  The fact that the decision-rendering court in this case was a bankruptcy court may further complicate the issue.  See Copeland v. Merrill Lynch & Co., Inc., 47 F.3d 1415, 1422 (5th Cir. 1995) (noting live question as to whether or not the jurisdiction of a decision-rendering bankruptcy court must be "core" in order to satisfy the "competent jurisdiction" component of collateral estoppel).

judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court. Because the second-filed court is not binding the litigants before it to a ruling of the first, there is no reason to examine the jurisdiction of the first-filed court. Such a requirement would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize: the jurisdictional ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there. Because the doctrines approach the problem of inconsistent rulings and judicial economy from different perspectives, different procedures are required for proper operation of the rules. As such, the district court properly declined to accept Cadle's suggestion to apply a jurisdictional requirement to the first-to-file rule.

### 2. Why the Jurisdiction of the First-Filed Court Might Matter

In light of this distinction between collateral estoppel and the first-to-file rule, it comes as no surprise that Cadle has not presented any persuasive case law to support its analogy. The only support that Cadle provides for its

12

argument comes from a case decided by a district court in the Third Circuit, Jefferson Ward Stores, Inc. v. Doody Co., 560 F. Supp. 35 (E.D. Pa. 1983). Jefferson Ward had contracted with Doody to renovate its stores; after several rounds of complaints by Jefferson Ward, Doody filed an action in the Southern District of Ohio seeking a declaration that it had not breached their contract. Jefferson Ward then filed suit in the Eastern District of Pennsylvania against Doody for breach of contract and negligence. The "dispositive" factor in the court's decision to keep the case rather than dismiss it in favor of the first-filed court was "a serious question as to that court's jurisdiction." Jefferson Ward, 560 F. Supp. at 36. The court supported its decision with the following statement, which provides the sole basis for Cadle's argument in its brief: "It is not the first case filed which has precedence, but 'the court first obtaining jurisdiction of the parties and the issues' which should proceed with the litigation." Jefferson Ward, 560 F. Supp. at 37 (quoting Omni-Exploration, Inc. v. McGookey, 520 F. Supp. 36, 37 (E.D. Pa. 1981)). This excerpt would seem to lend support to Cadle's view that the first-to-file rule requires the second-filed court to consider the jurisdiction of the first.

Jefferson Ward's analysis of the first-to-file rule, however, is unpersuasive. The court's decision to consider

13

the jurisdiction of the first-filed court sprang from <u>Columbia Pictures Industries., Inc. v. Schneider</u>, 435 F. Supp. 762 (S.D.N.Y. 1977).[4]  That case presents a much clearer picture of how the jurisdiction of the first-filed court fits into the rule and indicates that <u>Jefferson Ward</u> failed to place the relevance of the first-filed court's jurisdiction in the proper context.  The defendants in <u>Columbia</u> had threatened antitrust litigation against Columbia; Columbia responded by filing an action in the Southern District of New York seeking a declaration that it had not violated any antitrust laws. <u>See</u> <u>id</u>. at 745-46.  The defendants filed their antitrust suit in the Central District of California six days later. Columbia moved the New York court to enjoin the defendants from pursuing their claim in California.  <u>Id</u>.

The New York court declined to issue the injunction, finding that although it was the first-filed court, exceptional circumstances militated against exercising its priority under the rule.  <u>Id</u>. at 747.  Among other factors (not relevant in this case), the court considered the effect that a potential dispute about its personal jurisdiction over Columbia would have on the value of judicial economy so central to the first-to-file rule.

---

[4] <u>Omni Exploration</u>, quoted by <u>Jefferson Ward</u> above, also relied on <u>Columbia Pictures</u> in its analysis. <u>See</u> <u>Omni Exploration</u>, 520 F. Supp. at 37-38.

14

> There is a substantial question . . . whether [personal] jurisdiction exists under the New York long arm statute against these defendants, all of whom reside in California. The possibility of an erroneous determination of personal jurisdiction in New York followed by lengthy proceedings thereafter over which we were ultimately found to lack jurisdiction, and the desirability of avoiding decisions unnecessary to ultimate resolution of the merits by a federal court strongly suggest that California is a more appropriate forum.

Columbia Pictures, 435 F. Supp. at 748. The mere existence of such questions suggested "that considerations of judicial economy require the case to be litigated first in California." Id. at 750. Subsequent case law, uncited by Cadle, casts the Jefferson Ward and Columbia Pictures decisions in the appropriate light. While the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor of that court's jurisdiction is never a condition precedent to applying it. See Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund, 677 F. Supp. 220 (S.D.N.Y. 1988) ("I would not conclude in the 'sound discretion' allotted to me in this matter that [jurisdictional uncertainty in the first filed court], standing virtually alone, should be so compelling as to cause me to depart from the well established and salutary first-filed rule."); Brower v. Flint Ink Corp., 865 F. Supp. 564, 570 (N.D. Iowa 1994) (noting that Berisford "rejected the suggestion that

15

jurisdictional uncertainties standing alone should be so compelling as to cause the court to depart from the 'first filed rule.'"); <u>Firstier Bank, N.A. v. G-2 Farms</u>, No. 95-3118, 1996 WL 539217, at *4 (D. Neb. Mar. 11, 1996) (noting that a jurisdictional dispute is only one factor to consider).

### 3. The District Court Properly Applied the First-To-File Rule

In sum, Cadle's view of the first-to-file rule is supported by neither the policies behind the rule nor the cases that apply it. While the jurisdictional certainty of the first-filed court might be a proper factor for a district court to weigh in maximizing judicial economy, Cadle does not allege that the court below erred in this respect. Nor could it: the district court in this case was the second-filed court, and under Fifth Circuit precedent that balancing act is reserved only for the first-filed court. "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed." <u>Mann</u>, 439 F.2d at 407. The district court correctly refused to act as a "super appellate court" by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its

16

analysis, the district court indeed avoided trenching on the authority of its sister court, one of "the very abuses the first-to-file rule is designed to prevent." Cadle, No. 97-1502, slip op. at 4.

### B.   Transfer or Dismiss?

Cadle argues in the alternative that the district court should have transferred the case back to the Laredo division rather than dismiss it entirely. We agree. "[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." Sutter Corp., 125 F.3d at 920. As noted above, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Save Power, 121 F.3d at 948. Thus, once the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the Laredo court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed. The district court erred by dismissing the suit.

17

MOTIONS DENIED.  The judgment of the district court is VACATED, and the case is REMANDED to the district court with instructions to transfer the case to the United States Bankruptcy Court for the Southern District of Texas, Laredo Division, for further proceedings consistent with this opinion.  Each party shall bear its own costs.