# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60726
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2017

Lyle W. Cayce
Clerk

GREEN TREE SERVICING, L.L.C.; WALTER INVESTMENT
MANAGEMENT CORPORATION; BEST INSURORS, INCORPORATED;
MID STATE CAPITAL, L.L.C.; MID STATE TRUST II; MID STATE TRUST
III; MID STATE TRUST IV; MID STATE TRUST V; MID STATE TRUST VI;
MID STATE TRUST VII; MID STATE TRUST VIII; MID STATE TRUST IX;
MID STATE TRUST X; MID STATE TRUST XI; WILMINGTON TRUST
COMPANY; MID-STATE CAPITAL CORPORATION 2004-1 TRUST; MID-
STATE CAPITAL CORPORATION 2005-1 TRUST; MID-STATE CAPITAL
CORPORATION 2006-1 TRUST; MID-STATE CAPITAL TRUST 2010-1,

            Plaintiffs - Appellees

v.

EARNEST CLAYTON; SHELIA CLAYTON,

            Defendants – Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-59

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-60726

Defendants–Appellants Earnest and Shelia Clayton appeal the district court's order compelling this dispute over a home construction and financing contract to arbitration.  In doing so, the district court denied the Claytons' request that this suit be consolidated with an earlier suit filed by the Claytons, which was pending before the same district court judge as this suit.  It also rejected the Claytons' argument that judicial estoppel applied to block the motion to compel arbitration.  Finding no error in the district court's judgment and concluding that the Claytons waived all of their remaining arguments by failing to raise them in the district court, we AFFIRM.

## I. FACTS AND PROCEEDINGS

This case involves the intersection of two separate suits, each involving Defendants–Appellants Earnest and Shelia Clayton and Plaintiffs–Appellees, who are various lending institutions and affiliated organizations[1] (collectively, the lenders).  For background, we describe each case in turn, but only the second is the subject of this appeal.

### A. *Clayton I*

The Claytons own a plot of land in Smith County, Mississippi.  In 2001, they contracted with a builder, Jim Walter Homes, Inc., for the construction and financing of a home on that land.  The Claytons executed a promissory note for $198,432 that was secured by a deed of trust on the land.  The contract contained an arbitration agreement that provided that the parties would

---

[1] More specifically Plaintiffs–Appellees are: (1) Green Tree Servicing, LLC (the Claytons' mortgage servicer); (2) Walter Investment Management Corp. (the parent company of Green Tree Servicing, LLC); (3) Best Insurors, Inc. (Green Tree Servicing, LLC's insurer); (4) Mid-State Trusts II–XI, Mid State Capital Corporation 2004-1, 2005-1, 2006 Trusts, and Mid State Capital Trust 2010-1 (a group of statutory trusts, one of which was the assignee of the Claytons' note and deed of trust); (5) Wilmington Trust Company (the owner–trustee of the trusts); and (6) Mid State Capital, LLC (the depositor into the trusts).

submit "any controversy or claim arising out of or relating to this contract, or breach thereof," to binding arbitration.  The arbitration agreement further provided that the arbitration would be conducted "in accordance with the Comprehensive Arbitration Rules and Procedures administered by J.A.M.S/Endispute."[2]

The Claytons eventually grew dissatisfied with the quality of their completed home after they learned it was not built in accordance with the building code, and they noticed latent defects, shoddy workmanship, and substandard materials.  In August 2015, they filed suit in Mississippi state court against the lenders, all of whom had non-Mississippi citizenship and thus were diverse for the purposes of federal jurisdiction (*Clayton I*).  In addition to naming the lenders as defendants, the Claytons also named two non-diverse defendants (collectively with the lenders, the *Clayton I* defendants): W. Steward Robison (the trustee named on the Claytons' deed of trust) and D.J. McNeil Electric and Plumbing, Inc. (a subcontractor of Jim Walter Homes).[3]  In their state court complaint, the Claytons alleged that they had been victims of a scheme jointly perpetrated by the *Clayton I* defendants and Jim Walter

---

[2] JAMS refers to the Judicial Arbitration and Mediation Services, Inc.  In full, the relevant portion of the arbitration agreement provided:

> The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as [sic] in tort or contract, or as a federal or state statutory claim, arising before, during or after performance of this contract, shall be settled by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures administered by J.A.M.S/Endispute, and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.  The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.

[3] In addition, the Claytons included among the *Clayton I* defendants John Does 1 through 25 who were "unknown and unnamed persons and/or entities who may be liable for the claims asserted herein."  The citizenship of these John Doe defendants was not specified and no specific defendants were ever substituted for them.

No. 16-60726

Homes that involved constructing a substandard and defective home, fraudulently inducing the Claytons to enter agreements, and making a myriad of misrepresentations to the Claytons. The complaint in *Clayton I* raised claims of, among other things, deceit and false statements/fraud, breach of contract, civil conspiracy, negligence, and intentional infliction of emotional distress and mental anguish. It sought remedies in the form of equitable accounting and an injunction (1) preventing the *Clayton I* defendants from assigning their interest in the Clayton property or seeking foreclosure on it and (2) suspending the Claytons' obligation to make further payments on the home loan.

In October 2015, the lenders removed the case to federal court on the basis of diversity jurisdiction, alleging improper joinder of the two non-diverse defendants. The case was assigned to Judge William H. Barbour, Jr., sitting in the Southern District of Mississippi. *See Clayton v. Green Tree Servicing, LLC*, No. 3:15-cv-712 (S.D. Miss.). Shortly after removal, the lenders moved to compel arbitration. In November 2015, the Claytons moved to remand the action, arguing that the two non-diverse defendants were proper parties to the action, and thus there was not complete diversity of citizenship for purposes of federal jurisdiction. The next day, the lenders and the Claytons filed a joint motion to stay briefing on the lenders' motions to compel arbitration pending Judge Barbour's resolution of the Claytons' motion to remand "[i]n order to promote judicial economy and the efficient use of judicial resources." That same day, Judge Barbour entered an order granting the joint motion to stay. From November 2015 through September 2016 the parties in *Clayton I* made multiple remand-related filings, including supplemental briefs, supplemental replies, and notices of supplemental authority.

4

No. 16-60726

**B. *Clayton II***

On January 29, 2016, while the remand briefing in *Clayton I* was ongoing, the lenders filed a separate suit against the Claytons (*Clayton II*), from which this appeal was taken. The lenders' complaint alleged that all of the claims the Claytons had brought in *Clayton I* were subject to the arbitration agreement and accordingly requested that the district court compel the matter to arbitration pursuant to Section 4 of the Federal Arbitration Act. The lenders also requested a stay of all proceedings in *Clayton I* pending arbitration. Like *Clayton I*, *Clayton II* was assigned to Judge Barbour. In February 2016, the Claytons moved to dismiss the lenders' complaint or, in the alternative, to consolidate it with *Clayton I*. The Claytons argued, in relevant part, that the first-to-file rule mandated that *Clayton II*, the later-filed case, be dismissed or consolidated because the earlier-filed case, *Clayton I*, had not yet been resolved. The lenders opposed this motion.

In April 2016, the lenders moved to compel arbitration in *Clayton II* and for a stay of all proceedings in *Clayton I*. The Claytons did not respond to the motion to compel arbitration. Instead, later that month, they moved to stay all proceedings in *Clayton II* pending a ruling on their motion to dismiss or consolidate with *Clayton I*. In June, after the lenders amended their complaint in light of an intervening Supreme Court case, the Claytons reurged their motion to dismiss with the inclusion of a new argument: the lenders were judicially estopped from moving to compel arbitration in *Clayton II* because they had previously taken the inconsistent position of agreeing to stay briefing on the motion to compel in *Clayton I*.

Judge Barbour issued an order addressing these dueling motions on September 28, 2016. The order denied the Claytons' motion to dismiss or, in the alternative, to consolidate and granted the lenders' motion to compel

5

arbitration. Judge Barbour first concluded that the first-to-file rule did not require that *Clayton II* be dismissed. Nor could it be consolidated with *Clayton I* because the two cases "rest[ed] on separate jurisdictional facts," namely, *Clayton I* may have been improperly removed on the basis of complete diversity while *Clayton II* was filed in federal court to begin with and raised no issue about the parties' citizenship. If the two were consolidated and the case was ultimately remanded, he noted, the claims in *Clayton II* would be shut out of federal court even though federal jurisdiction was established. Judge Barbour also rejected the Claytons' judicial estoppel argument, concluding that the lenders had not taken an inconsistent position in *Clayton I*, nor had he accepted this position in the course of staying briefing in *Clayton I*. Finally, he concluded that a valid arbitration agreement existed and, by virtue of its incorporation of the JAMS rules, it contained a delegation clause under which the parties agreed to arbitrate issues of arbitrability. Accordingly, Judge Barbour compelled all of the Claytons' claims to arbitration and stayed all litigation in *Clayton I* pending arbitration. The Claytons timely appeal the district court's *Clayton II* order.

## II.  FIRST-TO-FILE RULE

The Claytons appeal the district court's denial of their motion to dismiss, arguing that the first-to-file rule mandated that *Clayton II* be dismissed or consolidated with *Clayton I*. We review a district court's application of the first-to-file rule for abuse of discretion, *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677 (5th Cir. 2011), and "the contours of the rule itself" de novo, *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

The first-to-file rule is a discretionary doctrine that may be applied "when related cases are pending before two federal courts." *Sweet Little Mex. Corp.*, 665 F.3d at 677 (quoting *Cadle Co.*, 174 F.3d at 603). If there is

"substantial overlap" between the two cases, "the court in which the case was last filed may refuse to hear it." *Id.* at 677–78 (quoting *Cadle Co.*, 174 F.3d at 603). This allows "the court in which the action is first filed . . . to determine whether subsequently filed cases involving substantially similar issues should proceed." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). "The rule rests on principles of comity and sound judicial administration." *Cadle Co.*, 174 F.3d at 603. It is aimed at "maximiz[ing] judicial economy and minimiz[ing] embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Id.* at 604 (emphasis omitted).

Citing the first-to-file rule, the Claytons argue that, because *Clayton I* was filed before *Clayton II* and the issues in the two cases substantially overlapped, the district court should have dismissed *Clayton II* or consolidated it with *Clayton I.* Yet this argument overlooks a crucial fact: *Clayton I* and *Clayton II* were not "pending before two federal courts," *Sweet Little Mex. Corp.*, 665 F.3d at 677 (quoting *Cadle Co.*, 174 F.3d at 603); rather, they were pending before the *same* district court judge—Judge Barbour. The Claytons cite no authority for their contention that the rule applies to cases pending before the same judge. Indeed, we have never applied the first-to-file rule to two cases pending before the same judge. To the contrary, we have limited its application to related cases "pending before two judges in the same district . . . [or] related cases . . . filed in different districts." *Save Power Ltd.*, 121 F.3d at 950.

This limitation makes sense because the concerns undergirding the first-to-file rule are not triggered when the cases are before the same judge. The

No. 16-60726

first-to-file rule is aimed at avoiding both conflicting rulings on similar issues and duplicative rulings. *Cadle Co.*, 174 F.3d at 604. But when the same judge is deciding both cases, there is no danger of conflicting rulings. And it increases, rather than diminishes, judicial economy to allow a district court judge to choose which of two pending cases to rule on first. Indeed, we have recognized the "inherent power" of a district court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998) (recognizing inherent authority of district court to decide the order in which to decide pending motions). The district court utilized this inherent power here and did not abuse its discretion in doing so.

We conclude that it was not an abuse of discretion for the district court to decline to apply the first-to-file rule.[4] It was therefore not an error to deny the Claytons' motion to dismiss or consolidate on this basis.

## III.  JUDICIAL ESTOPPEL

The Claytons next argue that the district court erred in denying their motion to dismiss or consolidate because the lenders were judicially estopped from seeking to compel arbitration in *Clayton II* by their agreeing to stay arbitration briefing in *Clayton I*. We review the district court's decision regarding the applicability of judicial estoppel for abuse of discretion. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (per curiam).

---

[4] We do not address whether a district court judge can ever properly invoke the first-to-file rule in these circumstances.

No. 16-60726

Judicial estoppel is an equitable common law doctrine "that prevents a party from assuming inconsistent positions in litigation." *Id.* at 385 (quoting *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004)). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (quoting *Superior Crewboats, Inc.*, 374 F.3d at 334). In order for judicial estoppel to apply, we generally require three elements be met: (1) the party's position is clearly inconsistent with one it previously took in judicial proceedings; (2) the court accepted the previous purportedly inconsistent position; and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if the position is accepted. *Id.* at 385–86; *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 318 n.10 (5th Cir. 2011).

The district court concluded that the first two elements were not satisfied and thus judicial estoppel did not apply to the lenders' motion to compel arbitration in *Clayton II*. This was not an abuse of discretion. First, the lenders' positions in *Clayton I* and *Clayton II* were not inconsistent but rather reflect the distinct procedural posture of each case. In *Clayton I*, the lenders agreed to stay briefing on their motion to compel arbitration because the Claytons had moved for remand, arguing that federal diversity jurisdiction did not exist. The lenders' position in *Clayton I* was merely an acknowledgement of the fact that the district court first had to determine whether it had jurisdiction over the parties' dispute before it could compel arbitration in the matter. *See Vaden v. Discover Bank*, 556 U.S. 49, 62–63 (2009) (holding that a court must have subject matter jurisdiction over the "underlying dispute" between the parties in order to compel arbitration). In contrast, in *Clayton II*, there was no pending motion to remand nor was there any dispute over the

9

district court's subject matter jurisdiction. Given the distinct jurisdictional status of each case, the lenders' motion to compel arbitration in *Clayton II* was not inconsistent with its agreement to stay consideration of its motion to compel arbitration in *Clayton I*. *Cf. Weyand*, 649 F.3d at 318 (concluding that judicial estoppel did not bar party that had moved to compel arbitration in a previous suit from opposing arbitration because the previous suit involved "distinct[]" facts).

Second, as the district court explained in its order denying the Claytons' motion to dismiss, the district court did not accept the lenders' purportedly inconsistent position in *Clayton I*. Pursuant to the district court's local rule, the court must "give priority to . . . motions to remand, and other jurisdictional motions." S.D. Miss. L. U. Civ. R. 7(b)(7). This rule would have counseled the district court to rule on the Claytons' motion to remand prior to the lenders' motion to compel arbitration regardless whether the lenders agreed to a stay of briefing on the latter. Accordingly, in staying briefing on the lenders' motion to compel arbitration in *Clayton I*, the district court did not "accept" the lenders' position but rather followed the dictates of its local rules. In sum, the conditions for judicial estoppel were not met, and therefore the district court did not abuse its discretion in declining to apply judicial estoppel to bar the lenders' motion to compel arbitration in *Clayton II*.

## IV. ORDER COMPELLING ARBITRATION

Finally, the Claytons raise several challenges to the district court's order compelling all of their claims to arbitration. They attack the validity of the arbitration agreement, arguing that they did not knowingly assent to the delegation clause in the arbitration agreement. They note that the clause was "extrinsic" to the arbitration agreement and, as mere "ordinary consumer[s]," they could not be expected to have knowledge of it. In addition, they fault the

No. 16-60726

district court for relying on the current version of the JAMS rules in concluding that the parties agreed to delegate the issue of arbitrability, rather than the version of the rules in effect in 2001 when the arbitration agreement was signed.  Finally, they challenge the district court's failure to consider their allegations of fraud in the inducement of the contract containing the arbitration agreement.

However, the Claytons failed to raise any of these arguments in the district court in *Clayton II*.  As the district court noted, the Claytons did not respond to the lenders' motion to compel arbitration, and thus the motion was unopposed.  Indeed, the Claytons concede that they did not oppose the lenders' motion to compel.  Nor did the Claytons raise these arguments in their other filings in *Clayton II*: the motion to stay, motion to dismiss, or the renewed motion to dismiss.  Therefore all of the Claytons' arguments attacking the validity of the arbitration agreement are raised for the first time on appeal.

As a "general rule, arguments not raised before the district court are waived and will not be considered on appeal." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009).  One exception to this general rule is if the party "can demonstrate 'extraordinary circumstances,'" which exist "when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id.* (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996)).  However, the Claytons do not argue that such extraordinary circumstances exist here. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (stating that the party seeking review bears the burden of establishing extraordinary circumstances).  Accordingly, our general rule applies and we decline to consider these challenges to the arbitration agreement for the first time on appeal.

No. 16-60726

Seeking to avoid this conclusion, the Claytons argue that they "plainly sought to preserve" their opposition to the motion to compel in their motion to stay. In the motion to stay, the Claytons asked, in the event the motion was denied, for an additional 14 days to respond to the motion to compel arbitration. The district court nominally granted the Claytons' motion to stay on August 31, but rather than staying all proceedings pending a ruling on the Claytons' motion to dismiss or consolidate—as the Claytons had requested— the district court stayed proceedings pending a ruling on the lenders' motion to compel arbitration. It did not rule on the Claytons' request for additional time to respond to the motion to compel arbitration, but because this order was inconsistent with the Claytons' requested relief, it implicitly denied this request. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) ("The denial of a motion by the district court, although not formally expressed, may be *implied* by the entry of . . . an order inconsistent with the granting of the relief sought by the motion."). By the time the district court ruled on the motion to compel arbitration on September 28—one month later—the Claytons had not responded to the motion nor had they re-urged their request for more time to do so. In the order compelling arbitration, the district court noted that the Claytons "did not respond to the Motion to Compel Arbitration and the time for so doing has expired." The Claytons do not dispute this, nor do they offer any basis for finding the district court's denial of their request for additional time in error. Therefore, their request for additional time was insufficient to preserve the arguments against the arbitration agreement that they now make on appeal.

As a final argument for why they preserved these challenges to the arbitration agreement, the Claytons point to statements they made in their state court complaint regarding fraud on the part of the lenders. They argue

12

that these statements were sufficient to "ma[ke] known" their challenges to the arbitration agreement.  Their state court complaint noted that the Claytons were "unsophisticated and unsuspecting" purchasers who were "preyed upon" by the *Clayton I* defendants and "deceived into executing" "complex legal documents" that they "either did not understand or were not given a reasonable opportunity to read, review or consult [about]."  However, these arguments were made in the Claytons' state court complaint, which was only in the record in *Clayton II* because the lenders included it as an attachment to their complaint, as evidence of the claims that the lenders were moving to compel to arbitration.  In order for an argument to be properly raised in the district court such that it is preserved for appeal, "the litigant must press and not merely intimate the argument during the proceedings before the district court . . . [and] raise[] [it] to such a degree that the district court has an opportunity to rule on it."  *Belt v. EmCare, Inc.*, 444 F.3d 403, 408 (5th Cir. 2006) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).  The Claytons did not raise the challenges that they now make against the arbitration agreement in a form that the district court could rule on.  The mere inclusion of these arguments in an exhibit—which was not even proffered by the Claytons—on which the district court was not required to rule does not meet this standard.  Accordingly, the Claytons have waived all of the challenges to the arbitration agreement that they now raise on appeal, and we therefore decline to address them.

## V.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

13