IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 8, 2007

Charles R. Fulbruge III
Clerk

No. 07-20169
Summary Calendar

LARRY CARTER

Plaintiff - Appellant

V.

R JAMES NICHOLSON, Secretary of Veterans Affairs;
DEPARTMENT OF VETERANS AFFAIRS

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. 4:03-CV-5225

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Larry Carter appeals the district court's judgment dismissing his employment discrimination case. For the reasons that follow, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carter was employed by the Department of Veterans Affairs (the "Department") at Houston National Cemetery ("HNC"). Carter has twice sued his employer in federal district court. This appeal concerns Carter's first lawsuit ("Carter I"), which was based on two different administrative cases alleging discrimination that he brought before the Department's Office of Resolution Management: case numbers 2003-246 ("246"), and 2003-247 ("247"). Carter's second lawsuit ("Carter II") arose out of three additional discrimination cases that he brought before the Department: case numbers 2003-0851-200118028 ("8028"), 2001-0851-2002100608 ("608"), and 2003-0851-2003103509 ("3509").

The two cases underlying Carter I, case numbers 246 and 247, were consolidated by the Department and eventually resolved adversely to Carter by the Equal Employment Opportunity Commission, which issued a right-to-sue letter on August 4, 2003. Carter timely initiated Carter I by filing a pro se complaint against the Department in the Southern District of Texas on November 6, 2003. However, Carter failed to effectuate service of process within 120 days, and on June 25, 2004, the district court dismissed Carter I for want of prosecution.

Although Carter was proceeding pro se in Carter I, he had obtained counsel in connection with Carter II, which was filed in the Southern District of Texas on April 2, 2004, based upon a right-to-sue letter received December 29, 2003. Carter apparently did not tell his attorney about Carter I until after it had been dismissed for want of prosecution, because only then did the attorney make an appearance in Carter I, by filing a request for reconsideration on July 9, 2004. The district court interpreted this filing as a motion to reinstate the case and granted it on March 22, 2005. Carter, now acting through counsel in both cases, then filed a first amended complaint in Carter I on April 20, 2005. The

Department moved for a more definite statement, which the district court granted, and Carter filed a second amended complaint on October 17, 2005.

Meanwhile, Carter II had been dismissed on May 11, 2005. The Carter II district court determined that cases 8028 and 608 were barred by the statute of limitations, and that case 3509 was barred for failure to exhaust administrative remedies.

On October 27, 2005, the Department filed its answer to the second amended complaint in Carter I, and pled res judicata as an affirmative defense. On May 22, 2006, the Department filed a motion for partial summary judgment on the issue of what claims Carter could assert at trial. In this motion, the Department argued that Carter was precluded from relitigating claims that were part of Carter II, and urged that Carter I be limited to the claims raised in cases 646 and 647.

The district court noted that the Department's motion for partial summary judgment did not argue that the entire Carter I lawsuit was foreclosed by Carter II. However, the court sua sponte considered the preclusive effect of Carter II on Carter I under the doctrine of res judicata. After comparing the pleadings in Carter I and II, the court determined that both actions arose out of the same operative facts, and that the prior judgment in Carter II completely foreclosed adjudication of Carter I. The court then granted the Department's motion for partial summary judgment and entered a final judgment dismissing the case. Carter filed a motion for reconsideration under Federal Rule of Civil Procedure 59, which the court denied. Carter timely filed notice of appeal.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). "Summary judgment is proper when the evidence

reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

A.    Res Judicata

Carter first argues that the district court erred in concluding that Carter I was foreclosed by the judgment in Carter II under the doctrine of res judicata. Res judicata, also known as claim preclusion, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. In re Southmark Corp., 163 F.3d 925, 934 (5th Cir. 1999).

> For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

Nilsen v. City of Moss Point, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (citing Stevenson v. Int'l Paper Co., 516 F.2d 103, 108 (5th Cir. 1975)). It is undisputed that Carter II involved the same parties as Carter I and was decided by a court of competent jurisdiction. There is likewise no doubt that the dismissal of a claim as time-barred is a final judgment on the merits for res judicata purposes. See id. at 561. The question is whether the same cause of action is involved in both Carter I and II.

To determine whether two suits involve the same cause of action, this court has adopted the transactional test of the Restatement (Second) of Judgments. Petro–Hunt, L.L.C., v. United States, 365 F.3d 385, 396 (5th Cir. 2004). Under the transactional test, a prior judgment's preclusive effect extends

to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the action [that led to the prior judgment] arose." RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982). "What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage." Id. § 24(2). "[T]he critical issue is whether the two actions under consideration are based on the same nucleus of operative facts." Petro–Hunt, 365 F.3d at 396 (quoting Southmark, 163 F.3d at 934) (emphasis in original).

Carter contends that Carter I is not based on the same nucleus of operative facts as Carter II. Specifically, he argues that the incidents underlying Carter I occurred in 1999 in relation to his work as a tool and parts attendant at HNC. In contrast, he argues that the incidents underlying Carter II occurred in 2001 in relation to his work as a cemetery caretaker at HNC.

The district court, on the other hand, determined that the conduct complained of in both Carter I and II spanned the same time period and involved the same allegations that the Department had engaged in harassment, race discrimination, and reprisal for Carter's equal employment opportunity activity. The court labeled the cases "temporally and factually inseparable," and found them to be "predicated on the same core of operative facts."

Our review of the record indicates that the same transaction or series of transactions formed the basis for both Carter I and II. In fact, the instances of allegedly discriminatory conduct contained in the second amended complaint in Carter I are largely identical to those made in the second amended complaint in Carter II. Both complaints allege that in May 1999 Carter was told that he

would have to provide documentation for all annual and sick leave he used, when other employees were not held to such a strict standard. Both allege that shortly thereafter, he was ordered to leave his tool and parts attendant position to perform weed eating and trimming in the cemetery. Both allege that in June 1999 he was given a memo stating that the position of tool and parts attendant was to be abolished, and that he would be assigned to the position of cemetery caretaker effective August 2, 1999. Both allege that in September 1999 he was assigned to weeding duties after an equal employment opportunity counselor had conducted interviews at the cemetery. Both allege that after returning to work from medical leave in December 1999 he was assigned to cutting grass and trimming and told that management considered him a "troublemaker." Both allege that in January 2000 he was instructed to ride in a golf cart and "wick weed," which resulted in an injury to his leg. Finally, both allege that his supervisor changed the date of his retirement when processing his retirement papers.

Simply put, the record does not support Carter's assertion that Carter I and II were based on separate incidents occurring in different years. Rather, as the district court noted, both cases "originate[d] from the same course of allegedly discriminatory conduct." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 314 (5th Cir. 2004). As such, we have no trouble concluding that the fourth element of the Restatement's transactional test is satisfied.

Carter argues in the alternative that the district court overstated the preclusive effect of Carter II. According to Carter, the judgment in Carter II only precludes him from relitigating the Carter II court's decision as to the timeliness of that lawsuit. But "res judicata, by contrast to narrower doctrines of issue preclusion, bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication." Nilsen, 701 F.2d at 560 (emphasis in original). As the Nilsen court explained, a timebar

6

determination "bars not only the stale claim asserted but any others, though themselves still timely, that are part of the same cause of action." Id. at 562. Since the claims in Carter I and II involved the same cause of action and could have been advanced in a single suit, the district court did not err in concluding that the adjudication of Carter II completely precluded the continued litigation of Carter I.

B.     The District Court's Sua Sponte Consideration of Res Judicata

Carter next takes issue with the district court's sua sponte consideration of the effect of res judicata on Carter I. He also notes in his brief that res judicata is an affirmative defense that is ordinarily lost if not timely raised. See FED. R. CIV. P. 8(c); Arizona v. California, 530 U.S. 392, 410 (2000).

As a preliminary matter, the Department pled res judicata in its answer to Carter's second amended complaint, so the issue was not waived. Still, Carter points out that because the Department did not argue that the entire Carter I lawsuit was foreclosed by Carter II on res judicata grounds in its motion for partial summary judgment, he did not address this issue in his response to that motion. However, after the district court granted summary judgment on the issue of res judicata, Carter filed a motion for reconsideration, which pointed out the reasons he believed the district court's ruling to be legally erroneous. In response, the Department filed an opposition brief that argued in support of the court's initial ruling.

After considering Carter's motion for reconsideration and the Department's opposition, the court concluded that summary judgment was still appropriate. Carter admits in his brief on appeal that the reconsideration motion was warranted to "allow the parties to fully brief and address the preclusion issue on which the summary judgment dismissal was based." Since Carter ultimately had a full opportunity to be heard on the issue of res judicata, any procedural error in the granting of summary judgment on that issue was

cured. See Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917, 923 (5th Cir. 2000).

C.    The First-to-File Rule

Carter argues that the district court erred by not applying the first-to-file rule in this case. That rule usually applies when opposing parties have filed separate lawsuits concerning the same core facts. In such instances, the district court in which the later action was filed may dismiss, stay, or transfer the suit in order to avoid duplicative litigation. See W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728–31 (5th Cir. 1985). As a general rule, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Save Power Ltd. v. Synteck Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997). The first-to-file rule is grounded in principles of comity and sound judicial administration. Id. Its concern is to eliminate wasteful duplicative litigation, to avoid rulings that may trench upon a sister court's authority, and to avoid piecemeal resolution of issues calling for a uniform result. Id. This concern applies where, as was the case here, related cases are pending between two judges in the same district. See id.

It is unclear precisely how application of the first-to-file rule would have precluded the operation of res judicata in this case. It is possible that the Carter II court could have stayed or transferred that case once Carter I was reinstated, but apparently Carter never informed that court of the existence of Carter I while Carter II was still pending. And by the time the district court considered the Department's motion for summary judgment, Carter II had already proceeded to a final judgment. Since it is black letter law that a "later-filed claim can be preclusive of an earlier-filed claim," Ellis v. Amex Life Ins. Co., 211 F.3d 935, 937 (5th Cir. 2000) (quoting RESTATEMENT (SECOND) OF

JUDGMENTS § 14 cmt. a), the district court did not err in determining that Carter II had preclusive effect on Carter I, notwithstanding the first-to-file rule.

## D.    Equitable Tolling

Finally, Carter argues that the district court should apply equitable tolling to cases 8028 and 608, which were the subject of Carter II and found to be time-barred by the district court in that case. Apparently this section of Carter's brief was prepared before Carter II was resolved on appeal, because Carter recognizes that matters involving Carter II must be resolved in conjunction with the separate appeal of that case. To the extent that Carter argues that our analysis of the preclusive effect of Carter II on Carter I is somehow dependent on the resolution of the appeal of Carter II, we note that we have since affirmed the district court's judgment in Carter II. See Carter v. Dep't of Veterans Affairs, No. 06-20494, 2007 WL 1017064 (5th Cir. Mar. 29, 2007).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.