TRIPLE TEE GOLF, INC.,
et al., Plaintiffs,

v.

NIKE, INC., Defendant.

No. 4:08–CV–743–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

May 20, 2009.

Joseph F. Cleveland, Jr., Brackett & Ellis, Fort Worth, TX, Melvin K. Silverman, MK Silverman & Associates PC, Newark, NJ, for Plaintiffs.

Michael H. Martin, Cotten Schmidt, Fort Worth, TX, Christopher J. Renk, Banner & Witcoff Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION and ORDER

JOHN McBRYDE, District Judge.

Before the court for decision is the motion of defendant, Nike, Inc., ("Nike") to dismiss the complaint of plaintiffs, Triple Tee Golf, Inc., ("Triple Tee") and John P. Gillig ("Gillig"),[1] for failure to state a claim upon which relief can be granted and to sanction plaintiffs and their counsel under the authority of 28 U.S.C. § 1927. For the reasons stated below, the court has concluded that the motion to dismiss should be granted, and that the motion for sanctions should be denied without prejudice to reassertion at a future date.

---

1. Gillig was not a named party to, but was the main actor on behalf of Triple Tee in, the first round.

## I.

### Description and History of Both Rounds of this Litigation

This action is the second round of litigation between the parties to the action. For a description and history of the first round ("Triple Tee I") the court makes reference to the opinion of this court in *Triple Tee Golf, Inc. v. Nike, Inc.*, 2005 WL 1639317 (N.D.Tex. July 15, 2005), the opinion of the United States Court of Appeals for the Fifth Circuit in *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253 (5th Cir.2007), the opinion of this court in *Triple Tee Golf, Inc. v. Nike, Inc.*, 497 F.Supp.2d 827 (N.D.Tex.2007), the opinion of this court in *Triple Tee Golf, Inc. v. Nike, Inc.*, 511 F.Supp.2d 676 (N.D.Tex. 2007), and the unpublished opinion of the Fifth Circuit in *Triple Tee Golf, Inc. v. Nike, Inc.*, 281 Fed.Appx. 368 (5th Cir. 2008).

The essence of Triple Tee's allegations in Triple Tee I, as stated in the original complaint by which the action was filed in the United States District Court for the Southern District of Florida in January 2004, and in the three amended complaints filed in this court after the case was transferred here, was that on or about September 25, 2000, Gillig, at a meeting with John Thomas Stites, III ("Stites"), reviewed with Stites what Gillig considered to be his trade secrets (to which Gillig referred in his complaint as "POWERHEAD technology"), that during their meeting Stites agreed as a condition to Gillig's disclosure that all trade secrets disclosed by Gillig to Stites would be kept in absolute confidence, and that after their meeting Stites became employed by Nike and, while so employed, used those trade secrets to

Nike's benefit and Gillig's detriment. Triple Tee alleged in the original and each of the amended complaints that on October 13, 2000, Gillig assigned to Triple Tee all of his trade secrets associated with his POWERHEAD technology and that Gillig was the vice president and principal owner of Triple Tee. Allegations were made that appear to be a contention that the disclosures to Stites on September 25, 2000, were made by both Triple Tee and Gillig. By way of relief, Triple Tee sought an accounting of benefits Nike realized from use of the trade secrets and recovery from Stites and Nike of ordinary damages in excess of $50,000,000 per annum for the useful life of the trade secrets alleged to have been appropriated from Gillig by Nike and Stites.

The second round, the instant action, ("Triple Tee II") was commenced in October 2008 by the filing by Triple Tee and Gillig of their complaint against Nike in the United States District Court for the Southern District of Florida on October 8, 2008. The Florida court, upon the motion of Nike, transferred the action to this division of this court. By routine assignment the action was placed on the docket of the Honorable Terry Means. Judge Means, upon Nike's motion, transferred the action to the docket of the undersigned on February 11, 2009. Gillig was named as a plaintiff, along with Triple Tee, in Triple Tee II. The essence of the allegations is basically the same as that of the allegations made by Triple Tee in Triple Tee I. Plaintiffs added to the Triple Tee II complaint four declaration of inventorship counts. All theories for relief are predicated directly or indirectly on the contention of Triple Tee and Gillig that Nike and Stites violated the confidentiality agreement they say Gillig[2] and Stites reached in September

---

**2.** Again, allegations are made that the September 2000 disclosure to Stites was by both Triple Tee and Gillig.

2000 as a condition to the disclosure by Gillig to Stites of Gillig's trade secrets.[3]

## II.

### The Grounds of the Motion to Dismiss, and the Response of Triple Tee and Gillig

Nike's motion to dismiss for failure to state a claim upon which relief can be granted asserts two theories why the case should be dismissed, first that the claims asserted in Triple Tee II are barred by res judicata by reason of the adjudications made in Triple Tee I, and, second, that the trade secrets claim alleged in the Triple Tee II complaint is barred by limitations.

Triple Tee and Gillig respond to Nike's res judicata theory by contentions that (1) some of the claims asserted in Triple Tee II could not have been asserted in Triple Tee I and (2) Gillig's trade secret claims are not barred because he was not in privity with Triple Tee, and, therefore, is the only party-in-interest who could bring those claims. In response to Nike's limitations defense, Triple Tee and Gillig maintain that (1) their claims are not time-barred because limitations was tolled as to those claims and (2) no statute of limitations is applicable to the inventorship claims brought under 35 U.S.C. § 256.

## III.

### Applicable Rule 12(b)(6) Principles

The standards for deciding a motion to dismiss for failure to state a claim are well-settled. The court's task is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Supreme Court said that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. 99. However, the Supreme Court has held that it did not quite mean its "no set of facts" statement in *Conley. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562–63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating that the *Conley* "no set of facts" statement "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival," at 563, 127 S.Ct. 1955).

In evaluating whether the complaint states a viable claim, the court construes the allegations of the complaint favorably to the pleader. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955 (stating that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

**3.** A corporation by the name Impact Golf Technologies, Inc., was named a defendant in Triple Tee I, and allegations were made in Triple Tee I indicating that at certain relevant times Stites was acting through the corporation in engaging in activities about which Triple Tee and Gillig complain; and, similar allegations were made in the complaint by which Triple Tee II was instituted. Throughout, the parties have treated Stites and the corporation as one and the same, and the court follows the lead of the parties in this memorandum opinion. Whenever reference is made to Stites in this memorandum opinion, it includes, to the extent appropriate, reference to the corporation.

action will not do." (citations, brackets, and quotation marks omitted)); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). On a motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

■ A statute of limitations defense may properly be asserted in a motion to dismiss for failure to state a claim, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir.2007), as may a res judicata defense, *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 383, 386 (5th Cir.2005).

[2] While a motion to dismiss for failure to state a claim normally is decided on the basis of the contents of the pleading and any attachments thereto, there are circumstances when documents the defendant attaches to the motion to dismiss can be considered part of the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000). Such a motion may permissibly refer to, and rely upon, matters of public record, such as papers in other litigation. *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994). In addition to documents incorporated into the complaint and matters of public record, the court can consider in evaluating such a motion any matter of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

Nike relies in support of its motion on permissible material—plaintiffs' complaint in Triple Tee II (including the patent documents attached to that complaint) and documents that are publicly available in the district court and Fifth Circuit files of Triple Tee I. Plaintiffs apparently agree that the items relied on by Nike in support of its motion are appropriate for consideration.[4]

## IV.

### *Analysis*

#### A. *The Limitations Ground of the Motion*

■ During a telephone conference between the court and counsel conducted on March 31, 2009, the court confirmed that the limitations ground of Nike's motion applies only to the misappropriation of trade secrets claim asserted by Triple Tee and Gillig in Count I of their Triple Tee II complaint. In Count I plaintiffs allege that the circumstances giving rise to the trade secrets claim occurred in September 2000 when, in effect, an understanding was reached that Stites would keep confidential all trade secrets disclosed by Gillig to Stites. Plaintiffs allege that on February 1, 2003, Gillig acquired information that caused him to know that Stites, in cooperation with Nike, was using his trade secrets in violation of the confidentiality understanding that had been reached between Stites and Gillig in September 2000.

The applicable limitations statute is section 16.010 of the Texas Civil Practice and Remedies Code, which reads as follows:

> (a) A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.

---

4. In none of plaintiffs' briefs do they contend that any of the material upon which Nike relies is not suitable for consideration in evaluating whether the motion to dismiss should be granted.

(b) A misappropriation of trade secrets that continues over time is a single cause of action and the limitations period described by Subsection (a) begins running without regard to whether the misappropriation is a single or continuing act.

Tex. Civ. Prac. & Rem.Code § 16.010 (Vernon 2002).

This action was initiated by the filing of the complaint on October 8, 2008, five years and eight months after Gillig discovered what plaintiffs contend was a misappropriation of Gillig's trade secrets. Thus, the statute of limitations is a bar to the Count I misappropriation of trade secrets claim unless one of the theories urged by plaintiffs of avoidance of the limitations bar were to be found applicable.

Plaintiffs contend that there was a tolling of limitations during the pendency of the appeals from this court's judgments in Triple Tee I. Plaintiffs do not cite any court authority that supports such a proposition, which the court concludes is without merit.

■■■ Equally without merit is plaintiffs' contention that limitations should be tolled due to a misnomer. This is not a misnomer case. Misnomer occurs when a party "merely misnames" the correct party in a pleading. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex.1990). Triple Tee is not simply an incorrect name for Gillig. Plaintiffs mention misidentification as a possible theory of avoidance. Misidentification does not toll the running of a statute of limitations. Even if it did, this is not a case of misidentification. Rather, it is a case of the plaintiff in Triple Tee I simply not having ownership of, and the right to assert in Triple Tee I, the claims that were being asserted in that action.

The complaint does not allege any facts that would, if proved, establish a legal or equitable basis for a tolling of limitations.

B. *The Res Judicata Theory*

1. *General*

■■■ Under the law of the Fifth Circuit "*res judicata* [ ] is the venerable legal canon that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (quoting *United States v. Shanbaum*, 10 F.3d 305 (5th Cir.1994)) (internal quotation marks omitted). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir.2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)) (internal quotation marks omitted). "Federal law determines the res judicata effect of a prior federal court judgment." *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir.1987).

■■ For there to be a viable res judicata defense, four elements must be established: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Procter & Gamble Co.*, 376 F.3d at 499. If the four elements of res judicata exist, all claims arising from the "common nucleus of operative facts" are barred by res judicata. *Id.* (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663 (5th Cir.1994)). The court now considers each of those elements as applied to the claims alleged by plaintiffs in Triple Tee II.

### 2. The Four Elements Are Satisfied

#### a. Whether the Parties in Triple Tee I and Triple Tee II are Identical or in Privity

██ Triple Tee was a party to both actions. In each action, the allegation is made in the complaint that Gillig was an officer and the principal owner of Triple Tee. Thus, plaintiffs, in effect, admit that Gillig was in privity with Triple Tee for res judicata purposes. *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir.1975). Nike was a defendant in Triple Tee I as it is in the instant action. Therefore, the first element of res judicata is satisfied.

#### b. Whether the Judgment in Triple Tee I Was a Final Judgment on the Merits by a Court Having Jurisdiction to Render It

██ The second and third elements of res judicata are treated under this sub-heading.[5] The third element concerns what the court decided by the August 10, 2007, judgment of dismissal of Triple Tee I, and the second bears on whether in Triple Tee I the court had jurisdiction to render a decision on the merits if, in fact, the decision was on the merits. Pursuant to March 31, 2009, and April 27, 2009, orders, each party has provided supplemental briefing on the issue of whether the court had jurisdiction to render a judgment on the merits in Triple Tee I.

The events in Triple Tee I that are directly pertinent to the points discussed under this subheading are as follows:

On July 13, 2007, the defendants in Triple Tee I filed a motion to dismiss based on lack of standing of Triple Tee to bring and maintain the action. The factual bases for the motion were that Triple Tee did not own the alleged trade secrets when it filed Triple Tee I and that Triple Tee did not own the alleged promise upon which the claims in Triple Tee I were based. Mot. to Dismiss in Triple Tee I at 18. In its opposition to the motion, Triple Tee argued that the motion to dismiss was not the proper procedural vehicle for resolution of a fact issue that in addition to determining whether the court had subject matter jurisdiction also would determine whether an element of the plaintiffs cause of action existed. Nike App., Vol. 3 at 277–80. Triple Tee suggested that the proper course would be for the court to treat the motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure so that the defendants would be put to a higher standard of proof as to the fact that could be outcome determinative of Triple Tee's claim in Triple Tee I.

██ The court agreed with Triple Tee, and by order signed July 26, 2007, the court converted the motion to dismiss to a Rule 56 motion and gave the parties an opportunity to supplement the summary judgment record. July 26, 2007, Order in Triple Tee I at 1, 7. As reflected by the memorandum opinion and order the court signed August 10, 2007, the court concluded that the action should be dismissed by application of Rule 56 standards, explaining that:

> The dismissal is appropriate by reason of plaintiff's failure to establish standing as well as because of the failure of the summary judgment record to raise a

---

**5.** The court questions whether the parties actually have directed their attention in their briefing to the "competent jurisdiction" element of res judicata. This court clearly had jurisdiction to decide whether it had subject matter jurisdiction in Triple Tee I. And, this court was a court of competent jurisdiction to decide the case on the merits assuming that subject matter jurisdiction existed. Therefore, the jurisdictional discussion relates to subject matter jurisdiction, rather than a more general competency to decide.

genuine issue of fact as to an essential element of plaintiff's claim—that Gillig assigned to plaintiff whatever rights Gillig acquired from his dealings with Stites in September 2000.

*Triple Tee Golf, Inc.*, 511 F.Supp.2d at 702–703. Consistent with the memorandum opinion and order the court signed August 10, 2007, the court also signed on that date a final judgment[6] dismissing all claims and causes of action asserted by Triple Tee in Triple Tee I.

Triple Tee appealed to the Fifth Circuit from this court's August 10, 2007, rulings in Triple Tee I. The Fifth Circuit affirmed this court's rulings by an opinion and judgment rendered June 1, 2008. The Fifth Circuit's opinion was worded, in its entirety, as follows:

> In this suit for misappropriation of trade secrets and for damages under the Texas Deceptive Trade Practices Act, the district court, on remand, granted summary judgment by determining that plaintiff Triple Tee Golf, Inc., never received a right to sue on the claim at issue and was not a "consumer" under the state statute. We have reviewed the briefs and pertinent portions of the record and have heard the arguments of counsel. We find no reversible error. The judgment, accordingly, is AFFIRMED.

*Triple Tee Golf, Inc.*, 281 Fed.Appx. 368 (5th Cir.2008).[7]

The record of Triple Tee I makes clear that this court ruled on the merits issue of whether Triple Tee was able to prove an essential element of its claim as well as, coincidentally, the jurisdictional lack of

standing issue. The fact that the Fifth Circuit directed its attention to the "consumer" issue in its opinion suggests that the Fifth Circuit considered that it was affirming a decision of this court on the merits.

\*    \*    \*    \*    \*    \*

Nike maintains that the court, at the suggestion of Triple Tee, elected to decide the merits of Triple Tee I rather than to limit the basis for dismissal to lack of subject matter jurisdiction. Triple Tee, on the other hand, maintains that because of the court's finding that Triple Tee lacked standing in Triple Tee I, the court was without subject matter jurisdiction to address the merits of Triple Tee's claim.

■ Triple Tee is correct that absence of standing on the part of the plaintiff prevents the court from having subject matter jurisdiction. *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir.2006) (saying that "the issue of standing is one of subject matter jurisdiction"). Reiterating what this court ruled in an earlier case, "[s]tanding is essential to the exercise of jurisdiction and is a threshold question ... [that] determin[es] the power of the court to entertain the suit." *Multimin USA, Inc. v. Walco Int'l, Inc.*, 2007 WL 1686511, at \*2 n. 2 (N.D.Tex. June 8, 2007) (internal quotation marks omitted). Generally speaking, "[b]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction of the court must establish the requisite standing to sue." *Ehm v. San Antonio City Council*, 269 Fed.Appx. 375, 376 (5th Cir.2008) (internal quotation marks omitted).

---

**6.** A summary judgment is a final judgment on the merits for res judicata purposes. *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir.1985).

**7.** This court had ruled in a memorandum opinion and order the court signed July 5, 2007, in Triple Tee I that Triple Tee was not a "consumer" under the Texas Deceptive Trade Practices–Consumer Protection Act. July 5, 2007, Order in Triple Tee I at 5–6.

Consistent with that general principle stated above, the Fifth Circuit has said that when the doctrine of collateral estoppel is relied on, the court must first examine the prior court's jurisdiction because the litigants in the present litigation are bound by a past ruling only if it was rendered by a court of competent jurisdiction. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603–04 (5th Cir.1999). The Fifth Circuit cited, and quoted with approval, the statement in the textbook 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4428 (1981), that "[A] judgment entered by a court lacking subject matter jurisdiction is void and is not entitled to res judicata effect." *Cadle Co.*, 174 F.3d at 604 (internal quotation marks omitted).[8]

Nike, on the other hand, relies on an exception the Fifth Circuit has approved to the general rule on which Triple Tee relies that standing is a threshold jurisdictional question that must be decided before the court reaches the merits. In *McBeath v. Inter–American Citizens for Decency Committee* the Fifth Circuit explained:

Undoubtedly, under Rule 12(d) of the Federal Rules of Civil Procedure a court may determine the prerequisites to jurisdiction in advance of a trial on the merits. However, where the factual and jurisdictional issues are completely intermeshed the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other.

374 F.2d 359, 362–63 (5th Cir.1967). Under the facts of *McBeath*, the Fifth Circuit held that:

McBeath should have been allowed to develop this evidence in a full hearing on the merits where the issue of jurisdiction and the merits are so closely tied together and inseparable. It was error for the court summarily to preclude him from so doing.

*McBeath*, 374 F.2d at 363.[9] *See also Continental Cas. Co. v. Dep't of Highways, State of La.*, 379 F.2d 673, 675 (5th Cir. 1967).

An earlier expression by the Fifth Circuit of the principle stated in *McBeath* is found in *Williamson v. Tucker*, in which the court made a point of mentioning the summary judgment rule as an appropriate procedural vehicle for resolving the merits-jurisdictional issues when they are intertwined. 645 F.2d 404, 415–16 (5th Cir. 1981). *Williamson* was cited by the Eleventh Circuit in its *Lawrence v. Dunbar* opinion for the proposition that "[w]hen the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." 919 F.2d 1525, 1530 (11th Cir.1990). The law of the Eleventh Circuit on the subject under discus-

---

**8.** In a footnote, the Fifth Circuit quoted from the same textbook that "[t]oday, it is safe to conclude that most federal court judgments are res judicata notwithstanding a lack of subject matter jurisdiction." *Cadle Co.*, 174 F.3d at 604 n. 3 (internal quotation marks omitted).

**9.** In *McBeath*, the Fifth Circuit cited with approval *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir.1965), in which the court said that "where the issue of jurisdiction is dependent upon a decision on the merits ... the

trial court should determine jurisdiction by proceeding to a decision on the merits" and *Fireman's Fund Insurance Co. v. Railway Express Agency*, 253 F.2d 780, 784 (6th Cir. 1958), in which the court said "[w]here the jurisdictional issue ... can not be decided without the ruling constituting at the same time a ruling on the merits of the case, the case should be heard and determined on its merits through regular trial procedure." *McBeath*, 374 F.2d at 363.

sion seems to parallel Fifth Circuit law, as evidenced by the following statement in *Lawrence*:

> We simply hold that under the law of this circuit, *see Eaton* and *Williamson*, federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact.

919 F.2d at 1530–31.[10]

In *Sierra Club v. Shell Oil Co.*, the Fifth Circuit gave the following explanation of the purpose of the rule that the court should make a decision on the merits rather than to dismiss for want of subject matter jurisdiction when the fact that determines jurisdiction also is dispositive of the merits:

> The purpose of this rule is to discourage district courts from dismissing cases on the pleadings for want of jurisdiction unless the pleadings reveal a clearly insubstantial or frivolous claim. Thus, [w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the property course ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.

817 F.2d 1169, 1172 (5th Cir.1987) (citation & internal quotation marks omitted).

Triple Tee responds to Nike's line of cases by asserting that the rule expressed in those cases applies only when a fact that determines federal court subject matter jurisdiction also is an element of a *federal* claim asserted by the plaintiff. Triple Tee's Second Supplemental Br. at 2. However, the court decisions do not indicate that applicability of the rule is thus limited. *See, e.g., Johns–Manville Sales Corp. v. Mitchell Enters., Inc.*, 417 F.2d 129, 131 (5th Cir.1969); *Continental Cas. Co.*, 379 F.2d at 675; *Fireman's Fund Ins. Co. v. Ry. Express Agency*, 253 F.2d 780, 784 (6th Cir.1958).[11] The court questions the sincerity of Triple Tee's "federal claim" contention, bearing in mind that Triple Tee vigorously urged Nike's line of cases as being applicable to Triple Tee I, even though there was no federal claim pending, when it was opposing Nike's motion to dismiss for lack of standing. Nike App., Vol. 3 at 277–80.

The court concludes, as it did when it treated the motion to dismiss for want of jurisdiction in Triple Tee I as a motion on the merits to be decided under the summary judgment practice, that the rule that the Fifth Circuit applied or recognized in *McBeath, Continental Casualty Co., Williamson,* and *Sierra Club* was applicable to Triple Tee I. In Triple Tee I, the court properly followed Triple Tee's suggestion that the motion to dismiss be converted to a Rule 56 motion that would provide a

---

**10.** The reference to *"Eaton"* in the quoted language is to *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727 (11th Cir.1982), and the reference to *"Williamson"* is to the Fifth Circuit's *Williamson* case mentioned in the text.

**11.** The court has studied the language used by the Supreme Court in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), in a "hypothetical jurisdiction" context that might cast doubt on the rule announced by the Fifth

Circuit in *Williamson* and the other Fifth Circuit cases mentioned above that have applied the reasoning of *Williamson*. The court has concluded that it should not be influenced by that language because the court views it to be *dicta* as well as being used in a discussion of a scheme for bypassing a ruling on subject matter jurisdiction that differs from the one discussed in the text, thus causing this court to continue to be obligated to follow the pronouncements of the Fifth Circuit on the subject.

vehicle for deciding the merits of the case as well as the issue of subject matter jurisdiction. The dismissal of Triple Tee I was based on the failure of Triple Tee to raise in the summary judgment record a genuine issue of fact as to an essential element of Triple Tee's claim, a ruling that coincidentally established that Triple Tee had failed to prove standing. Thus, the dismissal of Triple Tee I was a ruling on the merits as well as a determination that the court lacked subject matter jurisdiction. This court, under Fifth Circuit precedent, had jurisdiction to dismiss Triple Tee I on the merits, and did so. The dismissal was the final judgment that concluded Triple Tee I. Therefore, the second and third elements of res judicata have been satisfied.

### c. Whether the Same Claim or Cause of Action Was Involved in Both Actions

#### (1) The Contentions

■■■ The fourth element of res judicata clearly exists as to the cause of action the court expressly decided on the merits in Triple Tee I, i.e., the misappropriation of trade secrets cause of action. Therefore, the issue to be resolved here is whether the res judicata effect of the Triple Tee I judgment extends to the declaration of patent inventorship counts. Nike contends that the Fifth Circuit has adopted a transactional test in determining the breadth of a res judicata defense, that the transactional test bars all claims that were or could have been brought in the former action, not just those that were actually litigated, and that Triple Tee could have brought all of its patent inventorship claims in that action. Triple Tee disagrees, contending that none of its inventorship claims could have been brought in Triple Tee I.

#### (2) Governing Fifth Circuit Rules

In *Robinson v. National Cash Register Co.*, the Fifth Circuit said that it applies the "transactional test to determine whether two suits involve the same claim such that res judicata applies to bar the second suit" and that "[s]ubstance, not technicalities, governs the application of this test." 808 F.2d at 1124–25. An important consideration is whether the "same nucleus of facts is involved" in each suit. *Id.* at 1125. By way of further explanation, the Fifth Circuit said that:

> Under the transactional approach to res judicata, moreover, the fact that some claims or theories were not adjudicated in the first suit does not preclude a res judicata effect. The fact that these claims or theories could have been brought in the 1981 suit is controlling.

*Id.*

The status of the law of the Fifth Circuit on the breadth of the res judicata defense was summed up in *In re Howe* with the following discussion:

> Under [the transactional test], the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts.

913 F.2d 1138, 1144 (5th Cir.1990) (footnotes & internal quotation marks omitted). The Fifth Circuit added that:

> A party may not avoid the preclusive affect of res judicata by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal theory posed or recovery sought.

*Id.* at n. 10.

The fact that a plaintiff was prohibited because of untimeliness from asserting in the first action the claim against which the res judicata defense is urged does not prevent the defense from being effective.

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.,* 20 F.3d 663, 665 (5th Cir.1994) (saying that the rule of res judicata "applies equally to situations in which a claimant fails to raise an alternate theory in a timely fashion."). In *Nilsen v. City of Moss Point, Miss.,* the Fifth Circuit held that the tardy assertion of the claim being made in the second suit does not prevent a res judicata bar, explaining that:

> Both claims were properly held barred, since in each case the procedural system offered a full and fair opportunity for litigation of the § 1983 theory had it been timely presented. We have already bindingly held that it would have been improper and prejudicial to the city to permit Ms. Nilsen to add that theory tardily to *Nilsen II/III* [*Nilsen v. City of Moss Point,* 621 F.2d 117 (5th Cir. 1980) ]. That victory would be rendered a hollow one indeed were we now to determine that the proper consequence of her tardiness is the creation by us of a new exception to settled doctrines of claim preclusion to accommodate that tardiness, one authorizing an even tardier lawsuit. We decline to do so.

701 F.2d 556, 564 (5th Cir.1983) (en banc). In a similar vein, the Fifth Circuit said in *Procter & Gamble Co.* that "[t]here is no reason why defendants should be required to defend, or courts to hear, additional or multiple cases, free from the protections of res judicata, simply because the plaintiff chose to file them piecemeal at the same time rather than in succession." 376 F.3d at 500.

### (3) *Application of the Rules to this Case*

Triple Tee admitted, indeed advocated, in Triple Tee I that its inventorship claims

and the claim for misappropriation of trade secrets it asserted in Triple Tee I arose from a common nucleus of operative facts. In the complaint by which Triple Tee I was instituted in January 2004, Triple Tee made a direct connection between the alleged misappropriation of trade secrets and Nike's patents, alleging that:

> 55. In or about November, 2001, STITES began to apply for patents, with NIKE as an assignee, for novel systems of golf clubs and golfing equipment that incorporate a substantial amount of the ideas and concepts which [Triple Tee], through Gillig, related to IGT in confidence, through STITES.

Nike App., Vol. 1 at 11–12.[12] When Triple Tee untimely sought leave to amend its complaint in Triple Tee I (for the third time) to add, among other claims, its inventorship claims, it told the court that the claims it was proposing to add "arise out of the same conduct and occurrences set forth in Plaintiff's prior pleadings." Nike App., Vol. 1 at 36, 38. During the telephone hearing on the motion to amend, counsel for Triple Tee represented to the court that the inventorship claims were "part and parcel with the identical other causes of action," that "our position is that we showed certain things in confidence to Nike, and they used them improperly" that "resulted in the issuance of three specific design patents," *id.* at 83, and "[w]e just believe that the same facts, that we showed them these drawings, support [the inventorship] cause of action as well," *id.* at 87.

Because of the untimeliness of the mo-

---

**12.** Though alleging a direct connection between the facts of the misappropriation of trade secrets claim that Triple Tee asserted in its original complaint in Triple Tee I and the patent applications, Triple Tee appears to

have made the conscious decision not to assert a claim related to the patents until just before the discovery cutoff date in Triple Tee I.

tion to amend, the court denied it.[13]  *Id.* at 93.  After that, Triple Tee continued to insist that the patents in question were the product of the alleged misappropriation of confidential information Gillig provided to Stites on or about September 25, 2000 (which was the factual predicate of Triple Tee I, and is the factual predicate of Triple Tee II, and serves as the "common nucleus of operative facts" between the two actions).  Following the court's first grant of summary judgment for Nike in Triple Tee I on July 13, 2005, Triple Tee filed in October 2005 a motion, with supporting brief, for relief from the July 13 judgment, representing to the court that after the judgment was signed Triple Tee became aware of more patents held by Nike that were based on confidential information Triple Tee alleged Stites obtained from Gillig in September 2000.[14]  *Id.,* Vol. 2 at 109–131.  This court denied that motion. *Id.* at 142.

Triple Tee appealed from the denial of its post-judgment motion as well as the grant of summary judgment, *id.* at 144, 146, focusing in its brief on appeal on the alleged withholding by Nike from Triple Tee during discovery in Triple Tee I information about the patents.  *Id.* at 170–77.  Triple Tee was successful.  The opinion of the Fifth Circuit reversing and remanding the initial summary judgment in Triple Tee I was predicated in part on the same alleged facts advanced by Triple Tee in its October 2005 motion (and supporting brief) and its Fifth Circuit brief pertaining to the patents.  *Id.* at 188–91, 207–11.  In its opinion, the Fifth Circuit, in effect, invited Triple Tee to seek leave to amend its complaint to assert new claims to include any misuse of Triple Tee's trade secrets in any Nike club comprehended by the patent applications in question, saying:

> As we are reversing the district court's summary judgment dismissal of every [Triple Tee] claim that involves the misuse of its trade secrets in the accused clubs, the practical effect of our additional reversal of its denial of post-judgment relief will be to allow [Triple Tee] to expend its claims beyond the accused clubs to include any misuse of its trade secrets in any Nike club comprehended by the subject patent applications.

*Id.* at 210–11.

Notwithstanding the invitation given to Triple Tee by the Fifth Circuit, Triple Tee made no effort to add the patent inventorship claims to its Triple Tee I complaint following the Fifth Circuit's reversal and

---

**13.** The following exchange occurred between the court and counsel for Triple Tee during the telephone hearings:

  THE COURT:....

  ....

  Mr. Suder, why is the plaintiff just now asking for an amendment to assert this patent claim?

  MR. SUDER: Your Honor, it was done *after the depositions were taken in late March and early April when we were pleading the other counts.  In our view—and we respect the other side's position, certainly, and the Court's position—they're based on the same set of facts.  All of the drawings that we claim we showed in confidence, there are no other drawings or evidence that could be adduced to support our posi-*tion of inventorship.  We just believe that the same facts, that we showed them these *drawings, that cause of action as* well.  That these very drawings that we showed them in confidence are strikingly similar to the ornamental design depicted on these three design patents.
Nike App., Vol. 1 at 87.

**14.** The post-judgment motion filed by Triple Tee in October 2005 is particularly pertinent to the res judicata issue under discussion because of its assertions of the direct factual relationship between the alleged confidentiality understanding reached between Stites and Gillig in September 2000, on the one hand, and the Nike patents, on the other.  Nike App., Vol. 2 at 117–18, 121.

remand. However, after the action was remanded by the Fifth Circuit, Triple Tee filed in Triple Tee I in June 2007 a motion for leave to supplement the report of its expert Winfield to add reference to the patents to which Triple Tee alluded in its October 2005 post-summary judgment motion (and supporting brief) and its Fifth Circuit brief and to which the Fifth Circuit alluded in its opinion. *Id.* at 212. By the time the court ruled on Triple Tee's motion to supplement its expert report, the record contained information that caused the court to know that Triple Tee had provided this court and the Fifth Circuit blatantly false information concerning when it discovered, and the circumstances of its discovery of, the patents. In the memorandum opinion and order denying Triple Tee's motion, this court discussed the parts of the record establishing the falsity of Triple Tee's representations. *Id.*, Vol. 3 at 248–56.

The patent inventorship claims could have been brought in Triple Tee I. The same nucleus of facts defining those claims defined the trade secret misappropriation claim asserted by Triple Tee in Triple Tee I. The ruling of the court on the merits against Triple Tee on the misappropriation of trade secret claim in Triple Tee I makes Nike's res judicata defense to the patent inventorship claims valid. The nucleus of facts behind each of those claims is the September 25, 2000, transaction between Gillig and Stites when, according to Gillig, Stites obtained from Gillig confidential information about Gillig's trade secrets with the understanding that Stites would not use the information other than for Gillig's benefit. The patent inventorship claims are based on an alleged violation of that understanding, just as was Triple Tee's misappropriation claim that the court re-

solved against Triple Tee on the merits in Triple Tee I. Therefore, the fourth element of res judicata exists as to the patent inventorship claims—those claims are the same as the trade secret misappropriation claim resolved against Triple Tee in Triple Tee I in a res judicata sense, as the Fifth Circuit has defined and applied res judicata.

3. *For the Reasons Given Above, the Court Has Concluded That all Claims Asserted by Plaintiffs in Triple Tee II Are Barred by Res Judicata*

If plaintiffs were permitted to proceed against Nike with their patent inventorship claims, res judicata's goal of "insur[ing] the finality of judgments and thereby conserv[ing] judicial resources and protect[ing] litigants from multiple lawsuits" would be defeated. *Procter & Gamble Co.*, 376 F.3d at 499. Triple Tee and Gillig had a fair opportunity in Triple Tee I to assert all claims they might have based on the September 25, 2000, transaction between Stites and Gillig and subsequent alleged breaches of any understandings reached as part of that transaction. Now is the time finally to put to rest whatever claims Triple Tee and Gillig might contend they have by reason of that transaction. The court ruled against them as to that transaction in Triple Tee I, and they should not be permitted to continue to assert claims against Nike based on the nucleus of facts upon which Triple Tee based its unsuccessful claim in Triple Tee I.[15] All theories of recovery alleged in the Triple Tee II complaint are barred by res judicata.

### C. *The Motion for Sanctions*

The court considers the motion for sanctions of Nike to be premature. Therefore,

---

**15.** Plaintiff's Count VI accounting claim has no status independent of plaintiffs other claims. Therefore, it must be dismissed along with the others.

the court is denying the motion without prejudice to reassertion upon conclusion of any appeal that might be taken from the rulings that are being announced in this memorandum opinion and order or, if no appeal is taken, upon expiration of the time for the taking of an appeal.

## V.

### *Order*

For the reasons stated above,

The court ORDERS that Nike's motion to dismiss be, and is hereby, granted.

The court further ORDERS that the above-captioned action, and all claims asserted in it, be, and are hereby, dismissed.

The court further ORDERS that Nike's motion for sanctions be, and is hereby, denied without prejudice to reassertion at a future date.