# United States Court of Appeals for the Federal Circuit

2009-1415


JOHN P. GILLIG and TRIPLE TEE GOLF, INC.,

Plaintiffs-Appellants,

v.

NIKE, INC.,

Defendant-Appellee.


Melvin K. Silverman, M.K. Silverman & Associates, P.C., of Newark, New Jersey, argued for plaintiffs-appellants. Of counsel on the brief was Joseph F. Cleveland, Jr., Brackett & Ellis, P.C., of Fort Worth, Texas.

Christopher J. Renk, Banner & Witcoff, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief were J. Pieter van Es and Michael J. Harris. Of counsel on the brief was Michael H. Martin, Cotten Schmidt & Abbott, L.L.P., of Fort Worth, Texas.

Appealed from: United States District Court for the Northern District of Texas

Judge John H. McBryde

# United States Court of Appeals for the Federal Circuit

2009-1415

JOHN P. GILLIG and TRIPLE TEE GOLF, INC.,

Plaintiffs-Appellants,

v.

NIKE, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Texas in case no. 08-CV-743, Judge John H. McBryde.

_____

DECIDED:  April 20, 2010

_____

Before LINN, PLAGER, and DYK, Circuit Judges.

DYK, Circuit Judge.

John P. Gillig ("Gillig") and Triple Tee Golf, Inc. ("Triple Tee") appeal from a final judgment of the United States District Court for the Northern District of Texas.  The district court dismissed Gillig and Triple Tee's complaint for failure to state a claim upon which relief could be granted.  The court found that the plaintiffs' trade secrets claim was barred by the statute of limitations and res judicata, and that their inventorship claims were barred by res judicata.  We affirm the dismissal of the trade secrets claim.  We reverse and remand for further proceedings as to the inventorship claims, with one exception.

BACKGROUND

In January 2004, Triple Tee initiated its first lawsuit against Nike, Inc. ("Nike"), claiming that Nike had misappropriated Triple Tee's trade secrets involving golf club technology. We refer to this lawsuit as the "first action" or "Triple Tee I." Triple Tee alleged that on or about September 25, 2000, Gillig—Triple Tee's principal—met with John Thomas Stites III ("Stites") to discuss Gillig's unique designs for golf clubs. Gillig considered these designs a trade secret because they were novel over what was then available in the marketplace. As a condition of the meeting, Stites agreed to maintain all of Gillig's disclosed trade secret designs in the strictest confidence. Stites subsequently joined Nike, where Gillig's trade secrets were allegedly improperly used to develop a new type of golf club. Triple Tee alleged that Gillig assigned all of his rights in the trade secrets to Triple Tee on October 13, 2000, thereby making Triple Tee the proper plaintiff rather than Gillig.

On summary judgment, the district court found that an essential element of Triple Tee's trade secret cause of action was the ownership of the trade secret rights. See Triple Tee Golf, Inc. v. Nike, Inc., No. 4:04-CV-302-A, 2007 WL 4260489, at *14 (N.D. Tex. Aug. 10, 2007) ("Triple Tee I"). The court then held that there was no evidence that Triple Tee acquired any of those rights in 2000. Id. The district court dismissed the action both based on lack of standing and on the merits, stating:

> The dismissal is appropriate by reason of plaintiff's failure to establish standing as well as because of the failure of the summary judgment record to raise a genuine issue of fact as to an essential element of plaintiff's claim—that Gillig assigned to plaintiff whatever rights Gillig acquired from his dealings with Stites in September 2000.

Id. at *28.[1]  The court also denied Triple Tee's suggestion to substitute Gillig as the plaintiff, id. at *24, and held that a purported assignment from Gillig to Triple Tee in 2005 could not cure the defect in standing, id. at *22.  The Fifth Circuit affirmed.  Triple Tee Golf, Inc. v. Nike, Inc., 281 F. App'x 368 (5th Cir. 2008).

In October 2008, Triple Tee initiated the present action against Nike, this time with Gillig as co-plaintiff.  In addition to the trade secret claim asserted in Triple Tee I, their complaint asserted correction of inventorship claims under 35 U.S.C. § 256, alleging that Gillig was the true sole inventor or co-inventor of various patents relating to golf clubs owned by Nike.  These inventorship claims had not been considered in the first action.[2]  The complaint was unclear as to whether Triple Tee or Gillig was alleged to be the owner of the trade secrets or was asserting the inventorship claims.  Nike brought a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, which the district court granted.  Triple Tee Golf, Inc. v. Nike, Inc., 618 F. Supp. 2d 586, 587 (N.D. Tex. 2009) ("Triple Tee II").  The district court held that in the original action it "had jurisdiction to dismiss Triple Tee I on the merits, and did so."  Id. at 596.  It concluded that the trade secret claim was barred by the statute of limitations and res judicata, id. at 591, 599, and that the inventorship claims were also barred by res judicata because they arose from the same nucleus of operative facts as the trade

---

[1]    Nike contends that the district court dismissed the first action based on the lack of a confidential relationship between Stites and Gillig, as well as on grounds of lack of ownership.  We do not read the court's dismissal as based on anything except ownership of the trade secret rights.

[2]    In April 2005, during the Triple Tee I proceedings, Triple Tee asked the district court for leave to amend its complaint to add an inventorship correction claim over several recently issued golf club patents owned by Nike.  The court subsequently denied the motion.

secret claims asserted in the first action, id. at 599. The court barred both Triple Tee and Gillig from asserting the claims, because it held that Gillig was in privity with Triple Tee. Id. at 592.

Gillig and Triple Tee timely appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's Rule 12(b)(6) dismissal for failure to state a claim de novo. Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009); United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003). We review whether a statute of limitations has run de novo. Newby v. Enron Corp., 542 F.3d 463, 468 (5th Cir. 2008). We also review the res judicata effect of a prior judgment de novo. In re Bose Corp., 476 F.3d 1331, 1334 (Fed. Cir. 2007).

I  Trade Secret Statute of Limitations

Plaintiffs primarily argue that the statute of limitations was tolled as to Gillig (if he is the owner of the trade secrets) during the time in which Triple Tee I was pending. The misappropriation of trade secrets is a matter of state law. Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1360 (Fed. Cir. 2002). The parties agree that Texas law is applicable. Under Texas law, "[a] person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a) (emphasis added). Gillig's complaint in the present action was filed on October 8, 2008. He alleges that he first discovered Nike's misappropriation on or about February 1, 2003. There was thus a span of five

years and eight months between the discovery of the misappropriation and the filing of this suit, well exceeding the three-year limitations period. Gillig asserts that his trade secret claim is not barred, however, because the limitations period tolled during the Triple Tee I proceedings. As the district court noted, none of the cases cited by Gillig supports tolling under the circumstances of this case.

Under Texas law, a statute of limitations may be tolled for a second cause of action where the first action is a predicate action, in which the second cause of action is contingent on the first action's determination of rights. See, e.g., McDonald v. Ayres, 269 S.W. 1105, 1107 (Tex. Civ. App.-Galveston 1925) (holding that the limitations period did not run on a suit for interest on a note because the suit could not have been brought until the ownership of the note was resolved in another proceeding); Cavitt v. Amsler, 242 S.W. 246, 249 (Tex. Civ. App.-Austin 1922) (holding that the limitations period for a suit for stock dividends tolled while the suit to determine ownership of the stock was pending). The Texas courts have reasoned that "[w]here 'a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.'" Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex. 1991) (quoting Walker v. Hanes, 570 S.W.2d 534, 540 (Tex. Civ. App.-Corpus Christi 1978). This is not such a predicate case.[3]

---

[3] This case also does not present the situation where a legal impediment, such as a court order, prevents a plaintiff from bringing a second suit. See, e.g., Rice v. Louis A. Williams & Assocs., Inc., 86 S.W.3d 329, 341–42 (Tex. App.-Texarkana 2002) (noting that injunction against filing suit will toll statute of limitations); Walker, 570 S.W.2d at 540 (holding that appeal of court's refusal to admit competing will to probate tolled limitations period for obtaining service of process on parties).

Rather, Gillig argues that tolling applies because he could not have brought this second action during the pendency of Triple Tee I. This is so, he claims, because as in Hughes v. Mahaney & Higgins, 821 S.W.2d 154, he would have had to adopt inconsistent positions in the two cases regarding the ownership of rights relating to the trade secrets. In Hughes, the Texas Supreme Court applied tolling to the limitations period of attorney malpractice claims pending the completion of the underlying litigation that gave rise to the malpractice suit. The court held that tolling was appropriate because the client would have to adopt fundamentally inconsistent positions in the malpractice suit and the underlying litigation regarding the existence of a legal injury. Id. at 156–57. However, the Texas Supreme Court has explicitly limited Hughes: "Hughes does not hold that limitations is tolled whenever a litigant might be forced to take inconsistent positions. Such an exception to limitations would be far too broad. We expressly limited the rule in Hughes to attorney malpractice . . . ." Murphy v. Campbell, 964 S.W.2d 265, 272 (Tex. 1997). When faced with inconsistent positions in other cases, according to the court, the solution is to bring the second suit and request that it be abated pending the resolution of the first proceeding. Id. The limited tolling rule of Hughes is inapplicable to Gillig's trade secret claim.

Gillig also argues that because Nike was placed on notice of Gillig's trade secret claims within the limitations period and was not misled or placed at a disadvantage in obtaining evidence to defend the suit, the statute of limitations should be equitably tolled. As a general rule, the mere fact that a defendant has notice of a claim does not toll the limitations period. See Bailey v. Gardner, 154 S.W.3d 917, 920 (Tex. App.-Dallas 2005); Diamond v. Eighth Ave. 92, L.C., 105 S.W.3d 691, 695 (Tex. App.-Fort

Worth 2003). However, equitable tolling applies in exceptional situations "where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." Bailey, 154 S.W.3d at 920 (emphasis added). Texas recognizes that where the proper defendant is named in the complaint but the plaintiff is misidentified, and the defendant is not prejudiced by the error, the limitations period may be tolled. See Ealey v. Ins. Co. of N. Am., 660 S.W.2d 50, 52–53 (Tex. 1983); Maher v. Herrman, 69 S.W.3d 332, 339 (Tex. App.-Fort Worth 2002). However, "a litigant seeking equitable tolling bears the burden of establishing . . . that he has been pursuing his rights diligently." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); City of Murphy v. City of Parker, 932 S.W.2d 479, 481–82 (Tex. 1996) ("[L]imitations rest on a legislative policy judgment that requires the diligent pursuit of one's legal rights at the risk of losing them if they are not timely asserted."); cf. Ashley v. Hawkins, 293 S.W.3d 175, 179 (Tex. 2009) ("If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant."); Kerlin v. Sauceda, 263 S.W.3d 920, 925 (Tex. 2008) ("Fraudulent concealment [by a defendant] will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence.").

In this case, Gillig was not diligent in the pursuit of his rights. The district court in Triple Tee I found that Gillig "had known for more than three years that [Nike was]

contesting [Triple Tee]'s standing to bring [the] action before [Triple Tee] first made the suggestion . . . that a substitution of Gillig for [Triple Tee] under Rule 17(a) might be an appropriate alternative to dismissal." 2007 WL 4260489, at *26. Indeed, the court found "that, for whatever reason, [Triple Tee] made a calculated decision to pursue this action in its own name with knowledge that it had not received from Gillig an assignment of whatever rights Gillig acquired through his dealings with Stites in September 2000." Id.

While Gillig contends that he was diligent in that he subjectively believed that Triple Tee owned the rights in the trade secrets, he has failed to substantiate that contention with any credible evidence. See id. at *15–19 (detailing inconsistent positions put forward by Triple Tee regarding the date and circumstances of Gillig's purported 2000 assignment). This is not a case where the party without the legal right was named as a result of a good faith but mistaken belief that it was the party in interest and proceeded diligently to correct the error. Cf. Pierson v. SMS Financial II, L.L.C., 959 S.W.2d 343 (Tex. App.-Texarkana 1998) (applying equitable tolling to allow the real party in interest to substitute itself as plaintiff when request was made four months after naming the wrong plaintiff). Gillig here "cannot invoke equitable principles to excuse that lack of diligence." Baldwin County Welcome Ctr., 466 U.S. at 151. Equitable tolling thus has no application here. We therefore affirm the holding of the district court that Gillig's trade secret claims are barred by the statute of limitations.[4]

---

[4] To the extent that the trade secrets claim is asserted by Triple Tee, it can only assert whatever rights Gillig had and no more. Thus, Triple Tee cannot benefit from the tolling theories, except to the extent that it received a post-2000 assignment from Gillig. Since we hold that the statute of limitations has run as to Gillig, it has also accordingly run as to Triple Tee.

## II  Res Judicata

The district court also held that the trade secret and inventorship claims against Nike were barred by res judicata.  Since we have held that the trade secret claims are barred by the statute of limitations, we need only decide whether the inventorship claims are barred by res judicata.  However, in that connection we must also consider the trade secret claims because Nike's theory is that Triple Tee's trade secret claims are barred by res judicata and that, accordingly, its inventorship claims are barred as well because they arise from a common nucleus of operative facts.  Gillig, in turn, is said to be also barred because he was in privity with Triple Tee.  Plaintiffs argue on appeal that the district court erred because not all of the required elements for claim preclusion relating to Triple Tee I were satisfied.  We agree that res judicata in general does not bar the inventorship claims.  Therefore, we reverse the district court's dismissal of the inventorship claims, with one exception.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  Four elements must exist for a claim to be barred by res judicata: "(1) the parties [in both actions] are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005).  The district court found that all four elements were present in this case.  Triple Tee II, 618 F. Supp. 2d at 592–99.

To the extent that the dismissal in the original action was for lack of standing, there is no res judicata bar to a second action by a party with proper standing, but only a bar to another action by the same party alleging the same basis for standing (here, Triple Tee's claim of standing based on the purported 2000 assignment). See, e.g., Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction of the court must establish the requisite standing to sue."); Univ. of Pittsburgh v. Varian Med. Sys., Inc., 569 F.3d 1328, 1332 (Fed. Cir. 2009) (concluding that dismissal for lack of standing due to failure to join co-owner of patent should not have been with prejudice, in order to allow second action to be brought with proper parties); Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("[T]he district court erred in giving preclusive effect to the [earlier] judgment because its dismissal of [the earlier] complaint for lack of standing was not a final adjudication of the merits"); Restatement (Second) of Judgments § 20(1) (1982) ("A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claims: (a) When the judgment is one of dismissal for lack of jurisdiction . . . .").

But the district court purportedly also dismissed the original action on the merits, finding that Triple Tee's ownership of the trade secrets was an element of the trade secret cause of action, and that there was no evidence that Gillig assigned his trade secrets to Triple Tee in October 2000. Triple Tee I, 2007 WL 4260489, at *14; id. at *28. We need not decide whether the dismissal was on the merits or for lack of standing or both, as a dismissal here on the merits has the same effect as a dismissal for lack of standing.

We first consider whether an inventorship claim by Gillig would be barred by res judicata if an inventorship claim by Triple Tee would be barred. We conclude that Gillig's claims are not barred. In general, a "[d]ismissal on the ground that the plaintiff is not the real party in interest should not preclude a later action by the real party in interest." 18A Charles Alan Wright et al., Federal Practice and Procedure § 4438 (2d ed. 2002). However, Nike argues that this case is an exception, because Gillig and Triple Tee are in privity, and Gillig's failure to properly assert his rights in Triple Tee I precludes a "second bite at the apple." The district court found that Gillig was in privity with Triple Tee because "Gillig was an officer and the principal owner of Triple Tee." Triple Tee II, 618 F. Supp. 2d at 592. However, control of a party to the litigation through stock ownership or corporate officership is not enough to create privity, absent a showing that the corporate form has been ignored (which is not the case here). See Dudley v. Smith, 504 F.2d 979, 982 (5th Cir. 1974); see also In re Teltronics Servs., Inc., 762 F.2d 185, 191 (2d Cir. 1985); Am. Range Lines, Inc. v. Comm'r, 200 F.2d 844, 845 (2d Cir. 1952).

Instead, Nike relies on a "control of litigation" exception to establish privity. For that exception to apply, it is necessary to establish that the stockholder/officer controlled the litigation and that his interests were represented by the party in the suit. See Taylor v. Sturgell, 128 S. Ct. 2161, 2173 (2008) ("[A] nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered." (quoting Montana v. United States, 440 U.S. 147, 154 (1979))); Southmark Props. v. Charles House Corp., 742 F.2d 862, 870 (5th Cir. 1984); Drier v. Tarpon Oil Co., 522 F.2d 199, 200 (5th Cir. 1975). We are doubtful that such a showing has been made in this case.

The fact that Gillig may have been the ultimate decision maker for Triple Tee's business is not sufficient to establish that he controlled the litigation.

In any event, we need not decide whether in this case Gillig controlled the litigation in Triple Tee I, because the "control of litigation" exception does not apply to claim preclusion but only to issue preclusion or collateral estoppel. Montana, 440 U.S. at 154 ("Preclusion of such nonparties falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right."); Restatement (Second) of Judgments § 39 cmt. b (explaining that the effect of controlling litigation "applies to issue preclusion, and not to claim preclusion, because the person controlling the litigation, as a non-party, is by definition asserting or defending a claim other than one he himself may have"). Here, the only issue determined in the earlier lawsuit was that there was no assignment from Gillig to Triple Tee of any trade secret rights in the year 2000. That determination has no bearing on Gillig's inventorship interests. Thus, neither collateral estoppel nor res judicata bars Gillig from pursuing his inventorship claims.

Even Triple Tee is not entirely barred from pursuing the inventorship claims. The parties appear to agree that the inventorship claims arose from the same nucleus of operative facts as the trade secret claims. Claims arising from the same nucleus of operative facts are barred by res judicata. See Restatement (Second) of Judgments § 24 & cmt. b; see also In re Howe, 913 F.2d 1138, 1144 (5th Cir. 1990). To the extent that Triple Tee is asserting an inventorship correction claim based on a purported 2000

assignment, that claim is, of course, barred, since the district court already found that there was no assignment of rights in 2000. However, to the extent that Triple Tee is asserting an inventorship correction claim based on a later 2005 assignment, there is no bar. The first lawsuit did not address Triple Tee's claims based on the 2005 assignment. The district court held that any 2005 assignment could not retroactively resolve the standing issue of Triple Tee I. 2007 WL 4260489, at *22. Indeed, the court stated that in light of the events occurring after the filing of the first action, "the court would be at a loss as to what parties have ownership interests in the intellectual property involved in this litigation." Id. at *28.

"The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997). A plaintiff may seek leave to file a supplemental pleading to assert those claims, but "the doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." Fla. Power & Light Co. v. United States, 198 F.3d 1358, 1360 (Fed. Cir. 1999) (quoting Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998)) (quotation marks omitted); see also Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co., 228 F.3d 883, 886 (8th Cir. 2000); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 750 F.2d 731, 739–40 (9th Cir. 1984). Nike's effort to distinguish these cases as involving claims arising from different nuclei of operative facts is unavailing. That was not the basis for those decisions. Because any claim by Triple Tee based on a 2005

assignment did not accrue until after <u>Triple Tee I</u> was filed and was not decided in that first action, the doctrine of res judicata does not apply.[5]

CONCLUSION

For the aforementioned reasons, we affirm the district court's judgment that the trade secret claims are barred by the statute of limitations. We reverse the court's judgment that the inventorship claims are barred by res judicata (except as to Triple Tee's claims based on the alleged 2000 assignment), and remand for further proceedings on those claims.

<u>AFFIRMED IN PART</u>, <u>REVERSED IN PART</u>, and <u>REMANDED</u>

COSTS

No costs.

---

[5]     We also note that most of the inventorship claims could not have been brought until after <u>Triple Tee I</u> was filed. Of the eight patents listed by Gillig in his 2008 complaint in the present action, only one had issued prior to the 2004 filing of <u>Triple Tee I</u>. We recently held that there is no cause of action to correct inventorship until a patent has issued. <u>See</u> <u>HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.</u>, No. 2006-1522, slip op. at 9–10 (Fed. Cir. Mar. 31, 2010).